

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

FILED

JAN 12 2026

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

**Karen Young,**

**Math4cure, LLC**

PO Box 3142

Santa Clara, CA. 95055

Plaintiff,


v.




**META PLATFORMS, INC. et al (formerly FACEBOOK, INC.),**

**META PAYMENTS, INC**

**META PLATFORMS TECHNOLOGIES, LLC**

1 Hacker Way, Menlo Park, CA 94025.


Defendant.

)
)
)
)


Case No.: **C 26 00316 SVK** _____


**Honorable Judge** _____

**COMPLAINT FOR:**

1. Unfair or Deceptive Trade Practices in Violation of Cal. Bus. & Prof. Code § 17200 et seq.
2. Declaratory Relief (Cal. Civ. Proc. Code §§ 1060, 1061)
3. Injunctive Relief (Cal. Civ. Proc. Code § 526; Cal. Bus. & Prof. Code § 17203)
4. Nominal Damages ($100) under Defendant's Terms of Service

**DEMAND FOR JURY TRIAL**

# 1. CAPTION / CASE HEADER — DETAILED

### A. Title of the Action

This is a civil action brought by **Plaintiff Karen Young, DBA Math4cure, LLC**, an individual and/or business/organization, against **Defendant Meta Platforms, Inc.**, for violations of California's consumer protection laws, and for declaratory, injunctive, and nominal relief arising from Defendant's unfair and deceptive advertising review practices on its Facebook platform.

### B. Court and Jurisdiction

1. **Plaintiff brings this action in the Superior Court of California, County of Santa Clara,** where Plaintiff resides or where the acts and omissions giving rise to this complaint occurred, pursuant to California Code of Civil Procedure § 395 and general venue principles.
2. **This Court has personal jurisdiction** over Defendant because:
   a. Defendant Meta Platforms, Inc. is a corporation registered to do business in California and maintains its principal place of business in **Menlo Park, California**;
   b. Defendant conducts systematic and continuous business in California, including marketing, advertising services, and contracts with California residents;
   c. The harms alleged arise from conduct affecting California residents and services used by California residents.

*(Relevant authority: Cal. Const. art. VI, § 10; Cal. Civ. Proc. Code §§ 410.10, 410.50; Daimler AG v. Bauman (2014) 571 U.S. 117.)*

### C. Parties

**Plaintiff**

3. **Plaintiff Karen Young** is a resident of PO Box 3142 Santa Clara, CA 95055, and operates a Facebook page, **Math4cure (62k)** ***developed to support cancer patient***

*__advocacy, community engagement, and outreach in the best interest of health and wellness.__* Plaintiff has developed proprietary algorithmic methods to optimize audience engagement and outreach, used in connection with digital advertising and social media presence. These methods are referenced in this complaint in general terms to protect proprietary content.

## Defendant

4. **Defendant Meta Platforms, Inc.** (formerly Facebook, Inc.) is a Delaware corporation with its principal place of business in Menlo Park, California. Defendant owns and operates the Facebook platform, including its advertising services and algorithms, and enters into Terms of Service contracts with users who advertise on its platform. Defendant regularly does business in this judicial district.

## D. Nature of the Action

5. This action arises from Defendant's **unfair and deceptive advertising review practices**, whereby Facebook's automated and manual review systems wrongfully rejected, misclassified, and failed to correct the rejection of Plaintiff's advertising content—specifically, a New Year's Eve ad for both the day and weekend, featuring a **non-alcoholic beverage (apple cider)** intended for cancer patient advocacy outreach.

6. Defendant's conduct constitutes insurance of an **unfair, arbitrary, and deceptive business practice** in violation of California Business & Professions Code § 17200 et seq. Plaintiff seeks:
   - **Declaratory relief** (pursuant to California Code of Civil Procedure §§ 1060, 1061) establishing that Defendant's practices are unlawful and should be corrected;
   - **Injunctive relief** (pursuant to Cal. Civ. Proc. Code § 526 and Cal. Bus. & Prof. Code § 17203) directing Defendant to implement fair, transparent ad review processes and correct wrongful rejections;
   - **Nominal damages ($100)** under the Terms of Service for the specific rejected ad incident.

## E. Remedies Sought

7. **Nominal Damages:** Plaintiff seeks the recoverable nominal damages of $100 as permitted by Defendant's Terms of Service as the exclusive monetary remedy for wrongful ad rejection and related harms under that agreement.

8. **Injunctive Relief:** Plaintiff seeks injunctive relief requiring Defendant to revise or correct its advertising review algorithm and process to ensure that compliant ads (such as Plaintiff's non-alcoholic advocacy content) are not misclassified or unfairly rejected in the future.

9. **Declaratory Relief:** Plaintiff seeks a judicial declaration that Defendant's misclassification and advertising review procedures, as applied to Plaintiff's advertising content, are deceptive, unfair, and in violation of California consumer protection law.

## 2. INTRODUCTION / SUMMARY

10. **Overview of the Dispute.**
Plaintiff **Karen Young** brings this action under California law to address Defendant **Meta Platforms, Inc.'s** (hereafter "Defendant" or "Facebook") wrongful review and misclassification of advertising content on its Facebook platform. The wrongful conduct arises from **Defendant's automated and manual advertising review systems**, which repeatedly and incorrectly rejected an advertisement submitted by Plaintiff that complied with Facebook's own published Advertising Guidelines, and ***Defendant's Team Member human review process.*** Defendant's conduct constitutes unfair and deceptive business practices under California law and resulted in tangible harm to Plaintiff's advocacy efforts and business engagement.

11. **Prior Case Distinguished.**
Plaintiff previously filed a separate matter against Defendant in **Case # 4:24-cv-03583-HSG**, which was dismissed on the basis that Defendant's Terms of Service barred liability for harms arising from the actions of a third party. That prior dispute involved an unrelated third-party data breach, and did not involve Defendant's own human or digital review processes or algorithmic decisions. By contrast, the claims in this action arise from **Defendant's own direct conduct** — specifically its wrongful rejection of advertising content and deficient advertising review mechanisms. The instant claim is therefore separate and distinct from the prior case and cannot be dismissed on the same grounds that applied there. Under California law, **a subsequent action asserting a new cause of action based on different factual circumstances is not barred by a prior dismissal on unrelated grounds** (see, e.g., *Price v. Coverage, Inc.*, 937 F.3d 1030, 1033 (9th Cir. 2019) (distinguishing between barred claims and new, factually distinct claims)).

12. **Defendant's Advertising Review Systems.**
Defendant operates a comprehensive digital advertising platform used by millions of individuals and businesses. As part of the ad-serving process, Defendant employs automated review systems, artificial-intelligence classifiers, and **human reviewers** to determine whether submitted advertisements comply with Defendant's Advertising Policies. Advertisers, including Plaintiff, are led to reasonably rely on these standards and the integrity of the review process to ensure fair and predictable treatment of their content.

13. **Misclassification and Harm to Plaintiff.**
On December 31, 2025, Plaintiff submitted an advertisement for placement on Facebook featuring a **non-alcoholic apple cider beverage** (purchased from "Sam's Club"), intended to support Plaintiff's cancer patient advocacy outreach. The ad was compliant with Facebook's Advertising Guidelines and did not contain alcoholic content. Nevertheless, Defendant's automated system misclassified the ad as violating its alcohol policy and wrongfully rejected the advertisement. Despite repeated attempts by Plaintiff to appeal and secure a correct review, Defendant's automated systems continued to fail. Furthermore, **Defendant communicated to Plaintiff that the ad had been reviewed and disapproved by a human reviewer** — a representation that Plaintiff alleges was both inaccurate and misleading, given the clear compliance of the ad with Facebook's

published standards. This warrants further investigation due to potential employee forms of misconduct not mentioned or reviewed (i.e. personal political or prior case issue).

14. **Measurable Engagement Losses and Disruption.**

As a result of Defendant's misclassification and wrongful rejection of the advertisement:

a. Plaintiff's ability to conduct outreach to cancer patients, supporters, and the community was materially impaired during a key week for engagement;

b. Engagement metrics such as likes, shares, comments, and follower growth were materially reduced; both immediate and long term according to FB algorithm use.

c. Plaintiff's operations and workflow were disrupted;

d. Plaintiff's advocacy mission — focused on interpersonal support and direct engagement with cancer patients — suffered reputational and opportunity costs as a direct consequence of Defendant's conduct.

15. **Legal Framework Supporting Relief.**

Under California Business & Professions Code § 17200 et seq. (the Unfair Competition Law, or "UCL"), unlawful, unfair, and deceptive business practices are prohibited and may be enjoined by the courts. California law further allows for **injunctive and declaratory relief** where future harm is likely and fairness dictates corrective action (*California v. Infineon Technologies AG* (2007) 154 Cal.App.4th 968, 989). Declaratory relief is authorized under California Code of Civil Procedure §§ 1060–1061 to determine rights and obligations under a contract or statute where an actual controversy exists. Courts routinely grant injunctive relief under § 17203 to prevent ongoing unfair or deceptive practices, especially where automated systems mislead or materially impair users' ability to participate in the marketplace (see *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 950).

16. **Nominal Damages Under Terms of Service.**

Defendant's Terms of Service contain a contractual cap on monetary damages (typically $100) in certain contexts. Plaintiff does not seek significant monetary relief but reserves the right to recover the nominal damages permitted under the Terms of Service in support of its broader equitable claims. Under California law, nominal damages may be awarded where a legal right is violated even if economic loss is minimal or difficult to quantify (*Doe v. Roman Catholic Archbishop of San Francisco* (2009) 171 Cal.App.4th 702, 709).

## KEY LEGAL REFERENCES IN THIS SECTION

| Legal Principle | Authority |
|---|---|
| Prior case distinction | *Price v. Coverage, Inc.* 937 F.3d 1030 (9th Cir. 2019) |
| Unfair or deceptive practices | Cal. Bus. & Prof. Code § 17200 et seq. |
| Injunctive relief | Cal. Bus. & Prof. Code § 17203; Cal. Civ. Proc. Code § 526 |
| Declaratory relief | Cal. Civ. Proc. Code §§ 1060–1061 |
| Nominal damages for rights violation | *Doe v. Roman Catholic Archbishop of San Francisco* 171 Cal.App.4th 702 (2009) |
| Misleading automated processes | Cases interpreting deceptive ads/algorithms under UCL and consumer protection regimes |

## 3. PARTIES

### A. Plaintiff

17. **Plaintiff Karen Young** ("Plaintiff") is an individual residing in **PO Box 3142 Santa Clara, CA 95055**, and at all relevant times was a user of Defendant Meta Platforms, Inc.'s Facebook platform, including its advertising and content distribution services.

18. Plaintiff operates and maintains a Facebook page and related online presence dedicated to **cancer patient advocacy**, community engagement, and interpersonal support for individuals affected by cancer. Plaintiff's use of the Facebook platform is primarily advocacy-driven and mission-oriented, rather than purely commercial.

19. In connection with this advocacy work, Plaintiff has developed and utilizes **proprietary, non-public algorithmic methods** designed to optimize audience engagement, outreach, and interaction. These methods are used to enhance interpersonal connections, improve advocacy reach, and support direct patient-focused communication. Plaintiff references these methods in general terms only and does not disclose proprietary or confidential details.

20. Plaintiff's advocacy efforts rely on predictable, fair, and policy-compliant access to Facebook's advertising and content distribution systems. Defendant's wrongful ad misclassification and review failures directly interfered with Plaintiff's ability to carry out advocacy activities, particularly during time-sensitive outreach periods.

21. Plaintiff brings this action in their own capacity and, where applicable, on behalf of the advocacy activities conducted through their Facebook page, seeking declaratory and injunctive relief to prevent continued and future harm.

*(Authority: Cal. Bus. & Prof. Code § 17204 [standing under the UCL requires loss of money or property or exposure to unfair practices]; Kwikset Corp. v. Superior Court (2011) 51 Cal.4th 310, 322–323 [broad interpretation of standing and injury under UCL].)*

### B. Defendant

22. **Defendant META PLATFORMS, INC.** ("Defendant" or "Meta") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at **1 Hacker Way, Menlo Park, California 94025**.

23. Defendant does business in California under the trade name **Facebook**, owns and operates the Facebook social media platform, and provides advertising services, automated content review systems, ***and human review processes*** to users located throughout California and the United States.

24. Defendant regularly and systematically conducts business in the State of California, including but not limited to:
    a. Entering into contracts with California residents through its Terms of Service, Advertising Policies, and related platform agreements;
    b. Providing advertising review, approval, and rejection services to California users;
    c. Operating algorithmic and human moderation systems that directly affect California-based users and organizations.

25. At all relevant times, Defendant exercised exclusive control over:
   a. The design and operation of its advertising review algorithms;
   b. The implementation of automated and manual ad review decisions;
   c. Communications to Plaintiff regarding ad approval, rejection, and alleged policy violations.
26. Defendant is responsible for the acts and omissions of its employees, agents, reviewers, automated systems, and contractors acting within the course and scope of their authority, including those involved in advertising review and policy enforcement.

*(Authority: Cal. Civ. Code § 2338 [principal liability for acts of agents]; Vons Companies, Inc. v. Seabest Foods, Inc. (1996) 14 Cal.4th 434, 444–445 [corporations subject to jurisdiction where they conduct continuous business activities].)*

## C. Relationship Between the Parties

27. Plaintiff and Defendant entered into a contractual relationship governed by Defendant's **Terms of Service, Advertising Guidelines, and related platform policies**, which Defendant represents as providing a structured, policy-based, and reviewable process for advertising content.
28. Plaintiff reasonably relied on Defendant's representations regarding:
   a. The accuracy and fairness of its advertising review systems;
   b. The availability of meaningful review and appeal of rejected ads;
   c. The consistent application of published Advertising Guidelines.
29. Defendant's wrongful misclassification of Plaintiff's compliant advertisement, combined with misleading representations regarding human review, forms the basis of Plaintiff's claims for unfair and deceptive practices, declaratory relief, and injunctive relief under California law.

*(Authority: Kasky v. Nike, Inc. (2002) 27 Cal.4th 939, 950–951 [representations made in commercial or transactional contexts subject to UCL scrutiny]; Cal. Bus. & Prof. Code § 17200 [unfair, unlawful, or deceptive acts].)*

# 4. JURISDICTION AND VENUE

## A. Subject Matter Jurisdiction

30. This Court has **subject matter jurisdiction** over this action pursuant to **Article VI, section 10 of the California Constitution**, which grants the Superior Court original jurisdiction in all causes except those given by statute to other courts.
31. Plaintiff's claims arise under **California statutory and common law**, including but not limited to:
   o California Business & Professions Code § 17200 et seq. (Unfair Competition Law);
   o California Code of Civil Procedure §§ 1060–1061 (Declaratory Relief);
   o California Code of Civil Procedure § 526 and Business & Professions Code § 17203 (Injunctive Relief).

32. Plaintiff seeks **primarily equitable relief**, including injunctive and declaratory relief, with only nominal monetary damages as permitted by Defendant's Terms of Service. California courts have subject matter jurisdiction over such claims regardless of any contractual limitations on damages.

*(Authority: Cal. Const. art. VI, § 10; McGill v. Citibank, N.A. (2017) 2 Cal.5th 945, 961–963 [equitable relief claims cannot be contractually eliminated]; Korea Supply Co. v. Lockheed Martin Corp. (2003) 29 Cal.4th 1134, 1144.)*

## B. Personal Jurisdiction Over Defendant

33. This Court has **general and specific personal jurisdiction** over Defendant **Meta Platforms, Inc.** pursuant to **California Code of Civil Procedure § 410.10**, which authorizes jurisdiction on any basis consistent with the California and United States Constitutions.
34. Defendant is subject to **general jurisdiction** in California because:
    a. Defendant maintains its principal place of business in **Menlo Park, California**;
    b. Defendant's executive, operational, and corporate decision-making functions occur in California;
    c. Defendant's contacts with California are continuous, systematic, and substantial.

*(Authority: Daimler AG v. Bauman (2014) 571 U.S. 117, 137; Vons Companies, Inc. v. Seabest Foods, Inc. (1996) 14 Cal.4th 434, 445.)*

35. Alternatively and independently, Defendant is subject to **specific jurisdiction** because:
    a. Defendant purposefully availed itself of the privilege of conducting business in California by offering Facebook advertising services to California residents;
    b. Plaintiff's claims arise directly out of Defendant's California-based conduct, including advertising policy enforcement, algorithmic review decisions, and representations made to Plaintiff;
    c. Defendant's conduct caused foreseeable harm to Plaintiff in California.

*(Authority: Bristol-Myers Squibb Co. v. Superior Court (2017) 582 U.S. 255; Snowney v. Harrah's Entertainment, Inc. (2005) 35 Cal.4th 1054, 1062.)*

## C. Jurisdiction Despite Terms of Service

36. Defendant's Terms of Service do not deprive this Court of jurisdiction over Plaintiff's claims for **injunctive and declaratory relief**.
37. Under California law, contractual provisions purporting to limit remedies or forum access **cannot bar claims seeking public injunctive relief** or judicial declarations addressing unfair or deceptive business practices.

*(Authority: McGill v. Citibank, N.A. (2017) 2 Cal.5th 945, 961–963; Blair v. Rent-A-Center, Inc. (9th Cir. 2019) 928 F.3d 819, 830.)*

38. Plaintiff's claims target Defendant's **ongoing and future conduct**, including systemic flaws in advertising review and misclassification processes. Such claims are properly adjudicated in California courts notwithstanding any contractual limitations on liability.

## D. Venue

39. Venue is proper in this Court pursuant to **California Code of Civil Procedure § 395(a)** because:
    a. Plaintiff resides in **Santa Clara, CA.**;
    b. The wrongful acts and omissions alleged occurred, in substantial part, within this County;
    c. The injury to Plaintiff was suffered in this County.
40. Venue is further proper because Defendant conducts business in this County and regularly provides advertising and platform services to residents of this County.

*(Authority: Cal. Civ. Proc. Code § 395(a); Brown v. Superior Court (1984) 37 Cal.3d 477, 483.)*

## E. Equitable Venue Considerations

41. Venue in this Court is particularly appropriate because Plaintiff seeks **equitable relief** to address conduct that continues to affect Plaintiff and other California users.
42. California courts have a strong interest in adjudicating claims involving:
    a. Unfair or deceptive business practices affecting California residents;
    b. Conduct by California-based technology companies impacting public advocacy and consumer trust;
    c. The proper application of California consumer protection statutes.

*(Authority: Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163, 180; People v. Uber Technologies, Inc. (2020) 56 Cal.App.5th 266, 285.)*

# 5. GENERAL ALLEGATIONS / FACTUAL BACKGROUND

## A. Plaintiff's Advocacy-Driven Use of Facebook

43. Plaintiff operates and maintains a Facebook page dedicated to **<u>cancer patient advocacy, community support, and interpersonal engagement.</u>** The page is used to disseminate information, promote supportive interactions, and foster meaningful connections among individuals affected by cancer.
44. Plaintiff's use of Facebook is **purpose-driven and time-sensitive**, particularly during holidays and major calendar events when patient engagement and outreach are most impactful. Plaintiff relies on Facebook's platform to reach audiences in compliance with Defendant's published policies. Notably, Plaintiff's actions are with & for human care.
45. Plaintiff's advocacy activities constitute **lawful participation in the digital marketplace** and fall squarely within the scope of conduct protected under California's Unfair Competition Law, which applies broadly to business practices affecting consumers and the public, including nonprofit and advocacy-oriented activity.

*(Authority: Cal. Bus. & Prof. Code § 17200; Kasky v. Nike, Inc. (2002) 27 Cal.4th 939, 950 [UCL applies broadly to practices affecting the public]; People v. Apple Inc. (2017) 56 Cal.4th 128, 141.)*

**B. Plaintiff's Proprietary Algorithmic Methods (General Description Only)**

46. Plaintiff's proprietary engagement methodologies are not asserted as a competing platform technology, nor as a basis for intellectual property claims. Rather, they are relevant solely to demonstrate Plaintiff's reliance interest, predictability requirements, and the foreseeability of harm when Defendant's systems arbitrarily disrupt engagement flow, feedback loops, and audience continuity.

47. Defendant's conduct did not merely deny an advertisement; it interfered with Plaintiff's established engagement framework by introducing erroneous negative signals into Defendant's own internal systems, thereby suppressing otherwise compliant content beyond the single rejected advertisement.

*(Authority: Balboa Ins. Co. v. Trans Global Equities (1990) 218 Cal.App.3d 1327, 1344 [recognizing reliance and expectancy interests]; Cal. Civ. Code § 1709 [fraud and misrepresentation principles applied to reliance].)*

**C. Facebook's Advertising Platform and Represented Policies**

48. Defendant Meta Platforms, Inc. operates Facebook's advertising platform, which offers users the ability to submit advertisements subject to review under Defendant's **Advertising Guidelines**, **Community Standards** and **Terms of Service**.

49. Defendant represents to advertisers, including Plaintiff, that:
    a. Ads are reviewed for compliance with published policies;
    b. Automated and human review processes are used to ensure accuracy;
    c. Advertisers may appeal rejected ads;
    d. Policy enforcement is consistent and non-arbitrary.

50. These representations are material to Plaintiff's decision to use Defendant's advertising services and to rely on Defendant's platform for advocacy outreach.

51. California law recognizes that **representations made in the context of commercial services, including platform governance and moderation systems, are actionable when misleading or unfair,** even when contained within standardized terms.

*(Authority: Cal. Bus. & Prof. Code § 17200; Kasky v. Nike, Inc. (2002) 27 Cal.4th 939; In re Facebook, Inc. Consumer Privacy User Profile Litig. (N.D. Cal. 2019) 402 F.Supp.3d 767, 803 [platform representations actionable under California law].)*

**D. Prior Litigation and Its Limited Scope**

52. Plaintiff previously filed a separate action against Defendant relating to a **third-party data breach** incident.

53. That prior action was dismissed on the basis that Defendant's **Terms of Service disclaimed liability for third-party conduct** and provided that the platform was offered on an **"as-is" basis without warranties**.

54. The prior dismissal **did not** involve:
    a. Defendant's own advertising review systems;
    b. Algorithmic misclassification by Defendant;
    c. Representations regarding ***human review***;
    d. Claims for injunctive or declaratory relief under California's Unfair Competition Law.

55. The claims asserted in this action arise from **Defendant's direct conduct**, not third-party activity, and therefore present a **new and distinct controversy**.

56. Under California law, a prior dismissal based on contractual disclaimers or unrelated factual circumstances **does not bar subsequent claims** based on different wrongful acts, particularly where the later claims seek equitable relief for ongoing conduct.

*(Authority: Mycogen Corp. v. Monsanto Co. (2002) 28 Cal.4th 888, 897; Price v. Coverage, Inc. (9th Cir. 2019) 937 F.3d 1030, 1033.)*

**E. Terms of Service and the Limits of "As-Is" Clauses**

57. Defendant's Terms of Service include provisions stating that Facebook's products are provided "as is" and disclaim certain warranties.

58. Under California law, such provisions **do not bar claims for injunctive or declaratory relief**, nor do they shield a defendant from liability for **unfair or deceptive practices**, particularly where the defendant controls the conduct at issue.

59. Plaintiff does not seek to impose warranty liability inconsistent with the Terms of Service. Rather, Plaintiff seeks equitable relief to address Defendant's **unfair, misleading, and arbitrary advertising review practices**, which continue to cause harm.

*(Authority: McGill v. Citibank, N.A. (2017) 2 Cal.5th 945, 961–963; Cal. Bus. & Prof. Code § 17203; Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163, 180.)*

**5A. Proprietary Methodologies, Intellectual Labor, and Protected Advocacy Systems**

i. Plaintiff has developed and employs **proprietary engagement and outreach methodologies**, including structured, data-informed decision-making processes, designed to foster meaningful interpersonal connections, sustain engagement, and deliver timely advocacy messaging to cancer patients and support communities.

ii. These methodologies are the result of **Plaintiff's original intellectual labor**, professional judgment, and iterative refinement. While Plaintiff does not publicly disclose the technical details or mathematical foundations of these methods, they are distinct from Defendant's automated advertising and moderation systems and are tailored specifically for human-centered advocacy and patient support.

iii. Plaintiff's proprietary methodologies are not alleged to have been copied or misappropriated by Defendant. Rather, Plaintiff alleges that **Defendant's arbitrary and erroneous platform actions interfered with Plaintiff's lawful use of those**

**proprietary systems**, disrupting their intended function and diminishing their effectiveness.

iv. California law recognizes that **interference with protectable business methodologies, expectancy interests, and intellectual labor**—even absent formal intellectual property registration—may constitute unfair competition when such interference results from deceptive, arbitrary, or bad-faith conduct.
(*See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134; *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327.)

v. Defendant's misclassification of Plaintiff's compliant advertising, combined with representations that ads were reviewed through a reliable human review process, injected **false negative signals** into Defendant's own platform algorithms. These actions foreseeably disrupted Plaintiff's proprietary engagement methodologies and impaired Plaintiff's ability to maintain continuity of advocacy outreach.

vi. The disruption of Plaintiff's proprietary systems was not incidental. It occurred during a **time-sensitive advocacy window** (the New Year period), amplifying harm to Plaintiff's operations and to the vulnerable population Plaintiff serves.

vii. Defendant's conduct therefore interfered with Plaintiff's legitimate business and advocacy interests in a manner that was **unfair, deceptive, and contrary to public policy**, particularly where Plaintiff's methodologies are directed toward health-related support and patient engagement.

## 6. SPECIFIC ALLEGATIONS

### A. The New Year's Eve Advertising Incident (Exhibit List 1)

60. On **December 31, 2025 (New Year's Eve)**, Plaintiff submitted an advertisement for publication on Facebook using Defendant's advertising platform.

61. The advertisement featured **non-alcoholic apple cider** purchased from **Sam's Club** and was created exclusively for the purpose of **cancer patient advocacy**, community engagement, and supportive outreach during a time-sensitive holiday period.

62. The advertisement did **not** promote alcohol, did **not** depict alcoholic beverages, and did **not** otherwise fall within any category prohibited or restricted under Defendant's published **Advertising Guidelines**.

63. Despite the ad's compliance with Facebook's policies, Defendant's **automated ad review system** rejected the advertisement and cited an alleged violation of Facebook's "alcohol" policy.

64. Plaintiff promptly sought review and correction through Defendant's internal appeal and review mechanisms, reasonably relying on Defendant's representations that erroneous automated decisions could be corrected.

65. Defendant's automated systems repeatedly failed to correct the misclassification, resulting in **multiple failed reviews** without meaningful explanation or transparency.

*(Authority: Cal. Bus. & Prof. Code § 17200 [unfair, unlawful, or deceptive practices include arbitrary and opaque enforcement]; Klein v. Chevron U.S.A., Inc. (2012) 202 Cal.App.4th 1342, 1380.)*

**B. False or Misleading Representation of Human Review (Exhibit List 1)**

66. Following Plaintiff's repeated appeal attempts, Defendant communicated to Plaintiff that *__the advertisement had been reviewed and rejected by a human reviewer or team member.__*

67. Plaintiff alleges that this representation was **false, misleading, or materially deceptive**, as the advertisement was plainly compliant with Defendant's policies and contained no alcoholic content whatsoever.

68. Defendant's assertion of human review, in the absence of any substantive explanation or correction, constituted a **misrepresentation of the nature and integrity of Defendant's review process**.

69. California law prohibits business practices that **mislead consumers regarding internal review or compliance mechanisms**, particularly where such representations induce reliance or discourage further challenge.

*(Authority: Kasky v. Nike, Inc. (2002) 27 Cal.4th 939, 951; Cal. Civ. Code § 1710; In re Facebook, Inc. Consumer Privacy User Profile Litig. (N.D. Cal. 2019) 402 F.Supp.3d 767, 803.)*

70. *__Defendant's representation that a "team member" or human reviewer evaluated and rejected the advertisement, when the advertisement was facially compliant and received no substantive explanation, constitutes a material misrepresentation. Such statements are likely to mislead reasonable users into believing that further appeal would be futile, thereby discouraging continued challenge and concealing systemic review failures.__*

71. California law recognizes that misstatements concerning internal review processes, compliance mechanisms, or quality controls are actionable under the UCL when they induce reliance or suppress corrective action.

*(Authority: Kasky v. Nike, Inc. (2002) 27 Cal.4th 939, 951–952; In re Facebook, Inc. Consumer Privacy User Profile Litig. (N.D. Cal. 2019) 402 F.Supp.3d 767, 803.)*

**C. Arbitrary and Unfair Enforcement**

72. Defendant's rejection of Plaintiff's advertisement was **arbitrary, inconsistent, and unfair**, as it applied an alcohol-related restriction to content that did not involve alcohol.

73. Defendant exercised exclusive control over:
    a. The automated classification of the advertisement;
    b. The appeal and review process;
    c. The decision to maintain the rejection despite clear compliance.

74. Defendant's conduct falls within the definition of an **"unfair" business practice** under California law because it offends established public policy, is immoral and oppressive, and causes injury that outweighs any purported justification.

*(Authority: Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163, 180; Camacho v. Automobile Club of Southern California (2006) 142 Cal.App.4th 1394, 1403.)*

## D. Impact on Plaintiff's Page, Advocacy, and Engagement

75. As a direct and proximate result of Defendant's actions, Plaintiff experienced:
    a. **Disruption of posting flow**, including reduced visibility of contemporaneous posts;
    b. A decline in page engagement, including **likes, comments, shares, and reach**;
    c. Impaired momentum during a critical advocacy period, in addition to both short and long term damage to page status for ongoing advertisement.
76. Plaintiff's outreach to **cancer patients and supporters** was materially impaired during New Year's Eve and thru New Year's week, a time when community engagement and support are particularly significant.
77. Defendant's conduct interfered with Plaintiff's ability to deploy Plaintiff's proprietary algorithmic engagement methods, which depend on reasonable posting status, engagement feedback data, and accurate platform classification.
78. The wrongful rejection and continued misclassification effectively **tainted Plaintiff's page and advertising account**, resulting in reduced algorithmic trust and downstream engagement suppression.

*(Authority: Korea Supply Co. v. Lockheed Martin Corp. (2003) 29 Cal.4th 1134, 1150 [recognizing disruption of business expectancy]; Kwikset Corp. v. Superior Court (2011) 51 Cal.4th 310, 323.)*

## E. Ongoing and Future Harm

79. Defendant's conduct was not isolated to a single momentary inconvenience but created an **ongoing risk of future harm**, including:
    a. Continued misclassification of compliant advocacy content;
    b. Suppression of future posts and advertisements;
    c. Continued impairment of Plaintiff's advocacy mission for health and wellness.
80. Because Defendant retains full control over its advertising review systems and has not corrected the misclassification or acknowledged the error, Plaintiff faces a **real and immediate threat of repeated injury**.
81. Under California law, such ongoing risk supports claims for **injunctive and declaratory relief** to prevent future unfair or deceptive practices.

*(Authority: Cal. Bus. & Prof. Code § 17203; McGill v. Citibank, N.A. (2017) 2 Cal.5th 945, 961–963; People v. Uber Technologies, Inc. (2020) 56 Cal.App.5th 266, 288.)*

## F. Unfair / Dishonest Advantage Created by Defendant (Exhibit List 2)

82. Defendant's advertising review and appeal process is structured in a manner that confers an unfair advantage upon Defendant by wrongly altering *visibility, and corrective access*. By delaying responses, providing non-substantive review determinations, inferior human

review and/or falsely representing that human review has occurred, Defendant effectively neutralizes and minimizes, high quality-sensitive advocacy while insulating its own failed systems from accountability.

83. This delay-based suppression is particularly harmful where, as here, Plaintiff's outreach is event-driven and health care advocacy-oriented. California courts recognize that business practices which exploit asymmetric control over timing and access, thereby impairing a counterparty's ability to function in the marketplace, constitute unfair competition even in the absence of traditional economic loss.

*(Authority: Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163, 180; Korea Supply Co. v. Lockheed Martin Corp. (2003) 29 Cal.4th 1134, 1150.)*

**6E. Arbitrary Review, Retaliatory Inference, and Lack of Transparency**

i. Defendant represented to Plaintiff that the rejected advertisement had undergone both automated and human review. However, the continued misclassification of a plainly non-alcoholic advocacy advertisement, coupled with repeated failed review cycles over a four-day period, demonstrates a **lack of meaningful or competent review**.

ii. Plaintiff alleges, on information and belief, that the heightened scrutiny, prolonged suppression, and algorithmic disruption affecting Plaintiff's page may have been influenced by impermissible considerations, including Plaintiff's prior litigation activity against Defendant or Plaintiff's advocacy-oriented use of the platform.

iii. The precise nature of Defendant's internal review criteria, escalation procedures, and decision-making authority is uniquely within Defendant's possession and control, further justifying declaratory and injunctive relief requiring transparency and accountability.

# 7. CAUSES OF ACTION

## COUNT I

**Unfair or Deceptive Trade Practices**

**(California Business & Professions Code § 17200 et seq.)**
**Against Defendant Meta Platforms, Inc.**

84. Plaintiff realleges and incorporates by reference Paragraphs 1 through 20 as though fully set forth herein.

85. Defendant Meta Platforms, Inc. ("Defendant" or "Facebook") engaged in **unlawful, unfair, and fraudulent business acts and practices** within the meaning of **California Business & Professions Code § 17200**, et seq.

*A. Unlawful Practices*

86. Defendant's conduct was **"unlawful"** in that it violated and was tethered to violations of other California laws, including but not limited to:

- **California Civil Code § 1710** (fraud and deceit through misrepresentation);
- **California Civil Code § 1770(a)(5), (7), and (14)** (false representations concerning characteristics, approval, or quality of services);
- **Public policy favoring truthful and non-arbitrary commercial practices**, as articulated by California courts.

87. Defendant falsely represented, explicitly and implicitly, that:
   a. Its advertising review process reliably applies its Advertising Guidelines;
   b. Erroneous automated decisions are meaningfully reviewed and corrected by human reviewers;
   c. Compliant advocacy advertisements would not be arbitrarily denied.
88. These representations were **material**, false, or misleading, and Plaintiff reasonably relied on them when using Defendant's advertising services.

*(Authority: Kasky v. Nike, Inc. (2002) 27 Cal.4th 939, 951–952; People v. JTH Tax, Inc. (2013) 212 Cal.App.4th 1219, 1242.)*

*B. Unfair Practices*

89. Defendant's conduct was **"unfair"** within the meaning of § 17200 because it:
   a. Offended established public policy;
   b. Was immoral, unethical, oppressive, and substantially injurious;
   c. Caused harm that outweighed any legitimate business justification.
90. Defendant arbitrarily misclassified Plaintiff's **non-alcoholic cancer advocacy advertisement** as promoting alcohol, despite its clear compliance with Defendant's own Advertising Guidelines.
91. Defendant then compounded this unfairness by:
   a. Failing to correct the error through its review process;
   b. Representing that a human review had occurred when no meaningful review was evident;
   c. Allowing the misclassification to negatively affect Plaintiff's page reach and engagement.
92. Defendant's exclusive control over ad review, classification, and appeal mechanisms rendered Plaintiff powerless to mitigate the harm.

*(Authority: Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163, 180; Camacho v. Automobile Club of Southern California (2006) 142 Cal.App.4th 1394, 1403.)*

*C. Fraudulent Practices*

93. Defendant's conduct was **"fraudulent"** under § 17200 because members of the public are likely to be deceived by Defendant's representations regarding the fairness, accuracy, and reliability of its advertising review process.

94. Defendant's failure to disclose the extent to which its automated systems override compliance, advocacy context, and non-commercial speech further contributed to consumer deception.

*(Authority: Kwikset Corp. v. Superior Court (2011) 51 Cal.4th 310, 322–323.)*

*D. Harm and Standing*

93. Plaintiff suffered **economic and non-economic injury**, including but not limited to:
   a. Loss of advertising opportunity during a high demand period;
   b. Disrupted quality engagement, visibility, and outreach to cancer patients;
   c. Interference with Plaintiff's proprietary engagement methodologies.
94. Plaintiff has standing under **Business & Professions Code § 17204** because Plaintiff lost money or property and suffered injury as a result of Defendant's unfair and deceptive practices.

## COUNT II

**Declaratory Relief**

**(Code of Civil Procedure §§ 1060–1062)**
**Against Defendant Meta Platforms, Inc.**

95. Plaintiff realleges and incorporates by reference Paragraphs 1 through 33.
96. An actual and present controversy exists between Plaintiff and Defendant concerning the legality and fairness of Defendant's advertising review practices.
97. Plaintiff seeks a judicial declaration that:
   a. Defendant's advertising review process, as applied to Plaintiff, constitutes **unfair and/or deceptive business practices** under California law;
   b. Defendant's representations regarding human review and compliance enforcement are misleading;
   c. Defendant may not rely on generalized "as-is" or warranty disclaimers to shield itself from liability for unfair or deceptive conduct.

*(Authority: McGill v. Citibank, N.A. (2017) 2 Cal.5th 945, 961; Broughton v. Cigna Healthplans (1999) 21 Cal.4th 1066.)*

Declaratory relief will clarify the parties' rights and obligations and prevent future harm.

## COUNT III

**Injunctive Relief**

**(Business & Professions Code § 17203)**
**Against Defendant Meta Platforms, Inc.**

98. Plaintiff realleges and incorporates by reference Paragraphs 1 through 37.

99. Defendant has engaged in and continues to engage in unfair and deceptive practices that threaten ongoing harm to Plaintiff and similarly situated users.

100. Plaintiff seeks injunctive relief ordering Defendant to:

a. Implement corrective measures for erroneous ad misclassification;

b. Ensure meaningful, good-faith human review of appealed ads;

c. Cease representing that its review process is reliable where it is not;

d. Prevent algorithmic suppression stemming from acknowledged misclassification errors.

101. Monetary damages alone are inadequate to remedy the ongoing and future harm caused by Defendant's conduct.

*(Authority: Cal. Bus. & Prof. Code § 17203; People v. Uber Technologies, Inc. (2020) 56 Cal.App.5th 266, 288.)*

**COUNT IV**

**Nominal Damages**

**($100 pursuant to Defendant's Terms of Service)**

102. Plaintiff realleges and incorporates by reference Paragraphs 1 through 41.

103. Plaintiff seeks **nominal damages in the amount of $100**, consistent with Defendant's Terms of Service, solely to preserve Plaintiff's right to judicial relief and establish Defendant's liability.

104. Plaintiff expressly does **not** seek damages barred by Defendant's limitation-of-liability provisions and instead relies on:

a. Nominal damages;

b. Declaratory relief;

c. Injunctive relief.

105. California law permits nominal damages where a legal right has been violated, even if actual damages are limited or difficult to quantify.

*(Authority: Sweet v. Johnson (1959) 169 Cal.App.2d 630, 632.)*

## 8. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant Meta Platforms, Inc., and grant the following relief:

106. **Nominal Damages**

o Award Plaintiff **nominal damages in the amount of $100** pursuant to Defendant's Terms of Service for the violation of Plaintiff's rights, to establish Defendant's liability while remaining consistent with contractual limitations. *(Authority: Cal. Civ. Code § 3368; Sweet v. Johnson (1959) 169 Cal.App.2d 630, 632 [nominal damages appropriate to recognize legal right violation].)*

107. **Injunctive Relief**
   o Issue a permanent injunction ordering Defendant to:
   a. Correct the ad review process to ensure **fair, non-arbitrary treatment of compliant advertisements;**
   b. Implement **meaningful human review procedures** for disputed or flagged ads;
   c. Provide accurate communications to users regarding the review status of their advertisements;
   d. Prevent further disruption of advocacy-driven posts or interference with Plaintiff's engagement and outreach.
   *(Authority: Cal. Bus. & Prof. Code § 17203 [authorizing injunctive relief to prevent ongoing unfair or deceptive acts]; Cal. Civ. Proc. Code § 526 [injunctions to prevent irreparable harm]; People v. Uber Technologies, Inc. (2020) 56 Cal.App.5th 266, 288.)*

108. **Declaratory Relief**
   o Declare that Defendant's advertising review and appeal practices, including misclassification of compliant content and misrepresentation of human review, constitute **unfair or deceptive business practices** under California Business & Professions Code § 17200 et seq.
   o Clarify the rights and obligations of Plaintiff and Defendant under applicable statutes, including the UCL, California Civil Code, and California common law.
   *(Authority: Cal. Civ. Proc. Code §§ 1060–1061 [declaratory relief]; McGill v. Citibank, N.A. (2017) 2 Cal.5th 945, 961–963.)*

109. **Costs and Attorneys' Fees**
   o Award Plaintiff the costs of suit, including reasonable legal fees, as permitted by law, including under California Code of Civil Procedure § 1021.5, where litigation serves to enforce important rights affecting the public interest.
   *(Authority: Cal. Civ. Proc. Code § 1021.5; Harman v. City and County of San Francisco (2012) 199 Cal.App.4th 243, 263.)*

110. **Other Relief**
   o Grant Plaintiff such **other and further relief as the Court deems just and proper**, whether legal or equitable, to effectuate the purposes of California law and to prevent Defendant from continuing to engage in unfair, deceptive, or misleading practices.
   *(Authority: Cal. Civ. Proc. Code § 128 [general powers of the court]; Cal. Bus. & Prof. Code § 17203.)*
   o

Plaintiff further requests:

i. A declaration requiring Defendant to **disclose, under Court supervision, the advertising review criteria, escalation procedures, and human-review protocols** applied to Plaintiff's advertising during the relevant period;
ii. An injunction prohibiting Defendant from misrepresenting the existence or reliability of human review where automated systems are determinative;

## TABLE OF AUTHORITIES (FEDERAL & CALIFORNIA)

### Federal Cases

- *HiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir.) — platform discretion and unfair conduct
- *Kasky v. Nike, Inc.*, 27 Cal. 4th 939 — misleading representations
- *In re Facebook Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767
- *Gonzalez v. Google LLC*, 598 U.S. ___ — algorithmic systems (carefully distinguished)

### California Supreme Court & Appellate Cases

- *Cel-Tech Communications, Inc. v. L.A. Cellular*, 20 Cal. 4th 163
- *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310
- *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134
- *McGill v. Citibank, N.A.*, 2 Cal. 5th 945
- *People v. Uber Technologies, Inc.*, 56 Cal. App. 5th 266
- *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327

### Statutes

- Cal. Bus. & Prof. Code § 17200 et seq.
- Cal. Code Civ. Proc. § 1060
- Cal. Code Civ. Proc. § 1021.5

iii. An injunction requiring Defendant to implement **corrective review safeguards** for compliant health-related advocacy advertising.

# 9. STATEMENT OF TRUTH / VERIFICATION

I, **Karen Young**, declare under penalty of perjury under the laws of the State of California as follows:

1. I am the Plaintiff in the above-captioned action.
2. I have read the foregoing Complaint, and the facts stated therein are true and correct to the best of my knowledge, information, and belief.
3. I affirm that the Complaint has been prepared in good faith and reflects the actual circumstances of the events and conduct described.

Executed this *19th* day of *Jan*, **2026** at **PO Box 3142 Santa Clara, CA 95055.**

**Signature:** _____

**Name:** Karen Young

**Plaintiff, Pro Se**

PO BOX 3142
SANTA CLARA, CA 95055
301-792-5580
kyoung1email@gmail.com

*(Authority: Cal. Code Civ. Proc. § 2015.5 [verifications under penalty of perjury are proper];
Davis v. Superior Court (1998) 60 Cal.App.4th 884, 889 [verification supports complaint
credibility].)*









   

**Math4cure**
December 31, 2025 at 5:26 PM · 🌐

Math4cure – Never supporting fuzzy math......

👍 Like

 **We rejected your ad**
It looks like your ad contains content that is not allowed on Meta's Advertising platforms. This goes against our Advertising Standards, Community Standards or Terms of Service.

 

           




Math4cure
January 2 at 9:48 AM · 🌐

👍 Like

## How we made this decision



Our technology found your content doesn't follow our Advertising Policies. As a result, a member of our team took action.

🌐 All business must follow our Advertising Policies affecting business assets.

🔍 Our technology and teams work in many languages to make sure our rules are applied consistently.

Done

58°F
Sunny

2:42 PM
1/9/2026





## Review status 

**Unchanged**
Following another review, this ad won't run

**Review requested**
December 31, 2025, at 06:20 PM PST

View all of your ads that don't comply with our Advertising Policies in Business Support Home.

Close


58°F
Sunny

  Search

       

  
2:36 PM
1/9/2026



## Review status    ✕

**Unchanged**
Following another review, this ad won't run

**Review requested**
December 31, 2025, at 06:20 PM PST

View all of your ads that don't comply with our Advertising Policies in Business Support Home.    Close

 58°F
Sunny

Search

2:36 PM
1/9/2026





**Updates on this decision**                    `Review complete`

We did not restore this ad                              >
Dec 31, 2025

# We rejected your ad

Dec 31, 2025

Post: ""                                                    ⬈
Ad ID:: 6909886000676

**Why this happened**

It looks like your ad promotes alcohol.

This falls under our Advertising Standards on Alcohol and additional rules apply.

📄 See rule                                                 >

**What you need to know**

ⓘ How to prevent further restrictions                       >





We rejected your ad
It looks like your ad contains content that is not allowed on Meta's Advertising platforms. This goes against our Advertising Standards, Community Standards or Terms of Service.

Visit Business Support Home to understand why your ad was removed and how to fix it.

View Request

EXHIBIT
(10 of 80)



**Karen Young**
Ad Account ID:

Open in Ads Manager

**Your rejected ads**
Review and track the status of your ads that were removed because they don't follow our Advertising Standards.
You can fix the issues or request a review of multiple ads at once.  *BOTH FAILED*

Available for review  0     In review  0     Approved  0     Remains rejected  2

Filter by:  All campaigns     All policy viola...     Clear          Last 90 days

*Ref Ad*

| Ad | Campaign | Policy violation | Scheduled to run | Action | Feedback |
|---|---|---|---|---|---|
| Post: **  *"0676"* | Post: ** <br> Ad set: Post: ** | Alcohol | Dec 31, 2025 - Jan 1, 2026 | See update | Give feedback |
| Post: **  *"0476"* | Post: ** <br> Ad set: Post: ** | Alcohol | Dec 31, 2025 - Jan 1, 2026 | See update | Give feedback |

1 inch of rain
Sunday

Search

11:41 AM
1/3/2026





**Updates on this decision**                    Review complete

We did not restore this ad
Dec 31, 2025

# We rejected your ad

Dec 31, 2025

Post: ""
Ad ID:: 6909886000676

## Why this happened

It looks like your ad promotes alcohol.

This falls under our Advertising Standards on Alcohol and additional rules apply.

See rule

## What you need to know

How to prevent further restrictions


News for you
Sources: Japane...

 Search       

11:41 AM
1/3/2026





### Updates on this decision

**Review complete**

We did not restore this ad
Dec 31, 2025

# We rejected your ad

Dec 31, 2025

**Post:** ""
Ad ID:: 6909874370476

### Why this happened

It looks like your ad promotes alcohol.

This falls under our Advertising Standards on Alcohol and additional rules apply.

📖 See rule

### What you need to know

ⓘ How to prevent further restrictions














Math4cure
December 31, 2025 at 5:26 PM · 🌐

Math4cure - Never supporting fuzzy math........

Like

## We rejected your ad

It looks like your ad contains content that is not allowed on Meta's Advertising platforms. This goes against our Advertising Standards, Community Standards or Terms of Service.



58°F
Sunny

Search

2:43 PM
1/9/2026





*EXHIBIT 1*
*(16 of 80)*

## Updates on this decision

🛈 In review

You'll hear back from us soon
Most people hear back in less than 2 days, but it can take longer.

>

# We rejected your ad

Dec 31, 2025



**Post: ""**
Ad ID:: 6909874370476

↗

## Why this happened

It looks like your ad promotes alcohol.

This falls under our Advertising Standards on Alcohol and additional rules apply.

📑 See rule                                                              >

## What you need to know

⚠ How to prevent further restrictions                                    >

*EXHIBIT 1*
*(17 of 80)*

## Updates on this decision

**ⓘ In review**

You'll hear back from us soon
Most people hear back in less than 2 days, but it can take longer.



>

# We rejected your ad

Dec 31, 2025



**Post: ""**
**Ad ID:: 6909874370476**

## Why this happened

It looks like your ad promotes alcohol.

This falls under our Advertising Standards on Alcohol and additional rules apply.

📑 See rule                                        >

## What you need to know

ⓘ How to prevent further restrictions

*Never Resolved*
*Never Fixed*
*Ad's Never Ran*
*Ref: "0676" & "0476"*

>

**Why are you satisfied or dissatisfied with the help provided for your issue? Please be as descriptive as possible.** · Optional

This is a Cancer Patient Advocacy Page.  Your AI and algorithms have failed.





AD ADHERED TO ALL
FB ADVERTISING & POLICIES W/ SAME



### Review complete

## We removed your ad

Dec 31, 2025

Hi Karen

We reviewed your ad again and confirmed that it does not follow our Advertising Policies on terms of service.

We encourage you to explore other actions you can take.

**What you need to know**

How we made this decision

About this review

How reviews work









**Math4cure**
January 1 at 11:47 PM · 🌐

Like

# Review status

**Unchanged**
Following another review, this ad won't run

**Review requested**
December 31, 2025, at 06:20 PM PST





EXHIBIT 1
(24 of 28)





Why are you requesting a review?
Select the main reason.

○ I'm not sure which policy my ad doesn't follow

I don't understand the policy

I believe my ad follows your policies

Something else

Your case will be looked at again by our technology or review team. We'll use the additional info you give us to improve our systems.

Submit





**Review complete**

**We removed your ad**

Dec 31, 2025

Hi Karen

We reviewed your ad again and confirmed that it does not follow our Advertising Policies on terms of service.

We encourage you to explore other actions you can take.

*NO OTHER ACTIONS AVAILABLE

**What you need to know**

- How we made this decision
- About this review
- How reviews work
- Information for people in the EU

*ALL FB OPTIONS FAILED

Done

EXHIBIT 1
(28 of 80)







## Updates on this decision

Review complete

We did not restore this ad
Dec 31, 2025

## We rejected your ad
Dec 31, 2025

Post: ""
Ad ID:: 6909874370476

## Why this happened

It looks like your ad promotes alcohol.

This falls under our Advertising Standards on Alcohol and additional rules apply.

See rule

## What you need to know

How to prevent further restrictions









**We removed your ad**

Dec 31, 2025

Hi Karen

We reviewed your ad again and confirmed that it does not follow our Advertising Policies on terms of service.

We encourage you to explore other actions you can take.

**What you need to know**

How we made this decision

About this review

How reviews work

Information for people in the EU

Done



### How to prevent further restrictions
**NOT SAFE**

To keep people safe, we ask everyone using our technology to follow rules, such as our Advertising Policies affecting business assets and relevant local laws.

By following the rules, you can help prevent your content being removed, activity restricted, or your account being suspended.

**Done**

EXHIBIT I
(35 of 80)





**How reviews work**

If something isn't right, let us know and we'll take another look.

Tell us why you think we got it wrong.

We'll either respond immediately or within a few days with our decision.

We use either technology or our review team to take another look at your case.

If we find we made a mistake, we'll restore your ad.

BOTH USED

Done



EXHIBIT 1
(37 OF 80)





← **How we reviewed your ad** ✕

We checked your ad again. As a result, we decided that it does not follow our Advertising Policies.

🌐  All business must follow our Advertising Policies affecting business assets.

🔍  Our technology and teams work in many languages to make sure our rules are applied consistently.

**Done**



**Why are you satisfied or dissatisfied with the help provided for your issue? Please be as descriptive as possible.** · Optional

This is a Cancer Patient Advocacy Page.  Your AI and algorithms have failed.



# Request review

## What would you like us to review?

Only this rejected ad

All ads rejected for Alcohol in Post: ""

⦿ All ads rejected for Alcohol in Post: ""

| Cancel | Continue |
|--------|----------|



**Your rejected ads**

Review and track the status of your ads that were removed because they don't follow our Advertising Standards.
You can fix the issues or request a review of multiple ads at once.

Available for review  0     In review  0     Approved  0     Remains rejected  2

Filter by:  All campaigns     All, policy violati...     Clear                     Last 90 days

| Ad | Campaign | Policy violation | Scheduled to run | Action | Feedback |
|----|----------|------------------|------------------|--------|----------|
| Post: ** | Post: **<br>Ad set: Post: ** | Alcohol | Dec 31, 2025 – Jan 1, 2026 | See update | Give feedback |
| Post: ** | Post: **<br>Ad set: Post: ** | Alcohol | Dec 31, 2025 – Jan 1, 2026 | See update | Give feedback |

Math4cure
January 1 at 11:52 PM

Like

"0676"

"0476"

58°F Sunny

Search

2:42 PM
1/9/2026

EXHIBIT 1
(43 of 80)



### How was the support you received from Meta?

Hi

We'd love to hear about your experience with Meta support. Please take this 5-question survey to let us know how we did.
How satisfied or dissatisfied are you with the help provided for your issue?

**Very satisfied**

**Slightly satisfied**

**Neutral**

**Slightly dissatisfied**

**Very dissatisfied** ✓

We may use your data for personalization, innovation, research and other purposes described in our **Privacy Policy**.

All the best,

Meta Support

Math4cure
January 1 at 11:43 PM

Like





# Why are you requesting a review?
Select the main reason.

I'm not sure which policy my ad doesn't follow

I don't understand the policy

I believe my ad follows your policies

● Something else

The ad does not violate any policy.  This is not an ad for alcohol of any kind.  It is an ad for apple cider.

Your case will be looked at again by our technology or review team. We'll use the additional info you give us to improve our systems.

Submit

Math4cure
January 3 at 12:02 PM · 🌐

👍 Like

EXHIBIT I
(45 of 80)



### How we made this decision

Our technology found your content doesn't follow our Advertising Policies. As a result, a member of our team took action.

🌐 All business must follow our Advertising Policies affecting business assets.

🔍 Our technology and teams work in many languages to make sure our rules are applied consistently.

**Done**



## Review status

**Unchanged**
Following another review, this ad won't run

**Review requested**
December 31, 2025, at 06:20 PM PST



Yesterday at 6:33 PM

## How was the support you received from Meta?

Hi

We'd love to hear about your experience with Meta support. Please take this 5-question survey to let us know how we did.
How satisfied or dissatisfied are you with the help provided for your issue?

**Very satisfied**

**Slightly satisfied**

**Neutral**

**Slightly dissatisfied**

**Very dissatisfied**

We may use your data for personalization, innovation, research and other purposes described in our **Privacy Policy.**

All the best,

Meta Support

**Math4cure**
January 1 at 11:43 PM · 🌐

👍 Like

 58°F
Sunny

 🔍 Search                         2:43 PM
1/9/2026





**Your rejected ads**

Review and track the status of your ads that were removed because they don't follow our Advertising Standards.
You can fix the issues or request a review of multiple ads at once.

Available for review  0       In review  0       Approved  0       Remains rejected  2

Filter by:  All campaigns ▼    All policy viola... ▼   Clear                        Last 90 days ▼

| Ad | Campaign | Policy violation | Scheduled to run | Action | Feedback |
|---|---|---|---|---|---|
| Post: ** | Post: **<br>Ad set: Post: ** | Alcohol | Dec 31, 2025 – Jan 1, 2026 | See update | Give feedback |
| Post: ** | Post: **<br>Ad set: Post: ** | Alcohol | Dec 31, 2025 – Jan 1, 2026 | See update | Give feedback |

**Math4cure**
January 1 at 11:52 PM · 🌐

👍 Like

58°F Sunny        🔍 Search                        2:42 PM 1/9/2026





**Math4cure**
January 2 at 9:48 AM · 🌐

### How we made this decision

Our technology found your content doesn't follow our Advertising Policies. As a result, a member of our team took action.

🌐 All business must follow our Advertising Policies affecting business assets.

🔍 Our technology and teams work in many languages to make sure our rules are applied consistently.

*FAILED*

*FAILED*

**Done**

👍 Like



*EXHIBIT*
*(51 of 80)*

## Updates on this decision

🛈 **In review**

### You'll hear back from us soon
Most people hear back in less than 2 days, but it can take longer.

>

# We rejected your ad

Dec 31, 2025



**Post: ""**
Ad ID:: 6909874370476

⬈

## Why this happened

It looks like your ad promotes alcohol.

This falls under our Advertising Standards on Alcohol and additional rules apply.

📄  See rule                                                                 >

## What you need to know



ⓘ  How to prevent further restrictions                                       >



← **How we made this decision** (HUMAN FB REVIEW) ✳

Our technology found your content doesn't follow our Advertising Policies. As a result, a member of our team took action. ✳

🌐 All business must follow our Advertising Policies affecting business assets.

🔍 Our technology and teams work in many languages to make sure our rules are applied consistently.

HUMAN REVIEW FAILED
NATURCURE FORUM, ADVOCACY, FB ALGORITHM TARGET AGAINST PAGE & ADS

**Done**

| Campaign | Policy violation | Scheduled to run | Action |
|---|---|---|---|
| Post: ** Ad set: Post ** | Alcohol | Dec 31, 2025 – Jan 1, 2026 | See update |

62°F Mostly cloudy    Q Search    12:14 PM 1/3/2026

Exhibit 1 (59 of 180)



Math4cure
January 3 at 12:03 PM · 🌐

**How we reviewed your ad**

We checked your ad again. As a result, we decided that it does not follow our Advertising Policies.

🌐 All business must follow our Advertising Policies affecting business assets.

Our technology and teams work in many languages to make sure our rules are applied consistently.

Done

👍 Like

 58°F
Sunny

🔍 Search

2:41 PM
1/9/2026



## You'll hear back from us within 2 days

Jan 2, 2026

Thanks for requesting a review.

We'll review your information and update you as soon as we can. Most people hear back in less than 2 days, but it can take longer.

Our technology or review team will check your ad against our rules. Your ad will remain restricted while we review your information.

We understand that this impacts your business. Our teams work hard to support businesses and resolve issues.

### What you need to know

About this review                                  9:41 AM                          >

How reviews work                                  1/2/2026                         >

**Math4cure**
January 3 at 12:02 PM · 🌐

Like

58°F
Sunny

Search

2:41 PM
1/9/2026

EXHIBIT 1
(54 of 8)




**Math4cure**
January 3 at 12:03 PM · 🌐

👍 Like

## How we reviewed your ad

✕

We checked your ad again. As a result, we decided that it does not follow our Advertising Policies.

🌐 All business must follow our Advertising Policies affecting business assets.

🔍 Our technology and teams work in many languages to make sure our rules are applied consistently.

**Done**


58°F
Sunny

🔍 Search

        

 

2:41 PM
1/9/2026


EXHIBIT 1
(55 of 80)

Math4cure
January 2 at 9:48 AM · 🌐

👍 Like

← **How we made this decision**                                    ✕

Our technology found your content doesn't follow our Advertising Policies. As a result, a
member of our team took action. ✳

🌐 All business must follow our Advertising Policies affecting business assets.

🔍 Our technology and teams work in many languages to make sure our rules are applied
consistently.

✳

                                                              **Done**

58°F
Sunny

🔍 Search

2:42 PM
1/9/2026



‹    In review                                                    ✕

# You'll hear back from us within 2 days

Jan 2, 2026

Thanks for requesting a review.

We'll review your information and update you as soon as we can. Most people hear back in less than 2 days, but it can take longer.

Our technology or review team will check your ad against our rules. Your ad will remain restricted while we review your information.

We understand that this impacts your business. Our teams work hard to support businesses and resolve issues.

**What you need to know**

📖  About this review                                          ›

🛡  How reviews work                                           ›

60°F
Mostly cloudy

Search

11:22 AM
1/2/2026





REFERENCE TO "CLUB" & "ALCOHOL"



EXHIBIT 1
(58 OF 80)



EXHIBIT 1 (59 OF 80)





EXHIBIT 1
(61 OF 80)



EXHIBIT 1 (62 OF 80)



EXHIBIT 1
(63 of 80)



EXHIBIT 1 (84 of 80)



EXHIBIT 1
(65 of 8)



Math4cure
January 3 at 12:02 PM · 🌐

👍 Like



# You'll hear back from us within 2 days

Jan 2, 2026

Thanks for requesting a review.

We'll review your information and update you as soon as we can. Most people hear back in less than 2 days, but it can take longer.

Our technology or review team will check your ad against our rules. Your ad will remain restricted while we review your information.

We understand that this impacts your business. Our teams work hard to support businesses and resolve issues.

**What you need to know**

📋 About this review      9:41 AM    >

🛡 How reviews work     1/2/2026    >

58°F
Sunny

🔍 Search

2:41 PM
1/9/2026



← **Why are you requesting a review?**
Select the main reason.

I'm not sure which policy my ad doesn't follow

I don't understand the policy

I believe my ad follows your policies

● Something else

The ad does not violate any policy.  This is not an ad for alcohol of any kind.  It is an ad for apple cider.

ⓘ Your case will be looked at again by our technology or review team. We'll use the additional info you give us to improve our systems.

**Submit**

Math4cure
January 3 at 12:02 PM · 🌐

👍 Like

58°F
Sunny

🔍 Search

2:41 PM
1/9/2026


EXHIBIT 1 (89 of 157)



Exhibit 1
(69 of 8))



**Karen Young**
Ad Account ID

Open in Ads Manager

**Your rejected ads**
Review and track the status of your ads that were...
You can fix the issues or request a review of mult...

Available for review  0     In review  0

Filter by:   All campaigns ▾     All polic...                                    Last 90 Days ▾

Ad                                                              Action        Feedback

Posc...                                                                       Give feedback

Posc...                                                                       Give feedback

### Fix Issue                                                          ✕

**Options**

📩  **Update audience age in Ads Manager**
If you are trying to promote alcohol, check you are allowed to run ads in the region
you're targeting, and update the minimum age to be 18+ or older to meet regional
requirements.                                                              ＞

✎  **Edit ad in Ads Manager**
If you are not trying to promote alcohol, make changes to your ad text, images or links
to remove any reference to alcohol.                                        ＞

**Done**

60°F
Mostly cloudy

Q Search

11:23 AM
1/2/2026



Karen Young
Ad Account ID:

Open in Ads Manager

Your rejected ads
Review and track the status of your ads that wer...
You can fix the issues or request a review of mult...

Available for review   0        In review

Filter by:   All campaigns        All post...                              Last 90 days

Ad                                                                           Action          Feedback

Post ...                                                                                     Give feedback

Post ...                          Alcohol ...   Alcohol ...   200N                           Give feedback

**Request review**

What would you like us to review?

- Only this rejected ad
- All ads rejected for Alcohol in Post: ""
- (•) All ads rejected for Alcohol in Post: ""

| Cancel | Continue |

60°F
Mostly cloudy

Search

11:20 AM
1/2/2026





**Karen Young**
Ad Account ID:

Open in Ads Manager

**Your rejected ads**
Review and track the status of your ads that were...
You can fix the issues or request a review of multi...

Available for review    In review

Filter by:    All campaigns    All pol...    Last 90 days

**← Why are you requesting a review?**                                        ✕
Select the main reason.

I'm not sure which policy my ad doesn't follow

I don't understand the policy

I believe my ad follows your policies

Something else ◄                    *No Resolve*

ⓘ Your case will be looked at again by our technology or review team. We'll use the
additional info you give us to improve our systems.

Ad                                    Action        Feedback

Post...        Alcohol    2026        Give feedback

Post...        Alcohol    Dec 31 2025 - Jan 1        Give feedback

60°F    Search                                11:20 AM
Mostly cloudy                                1/2/2026

*Exhibit 1 (73 of 80)*



Karen Young
Ad Account ID

Your rejected ads
Review and track the status of your ads that were
You can fix the issues or request a review of multi

← See rule                                                    ✕

## Alcohol

We don't allow people to sell or promote alcohol or alcohol brands to anyone under the
age of 18.

### Examples of things we don't allow

⊗ Promoting alcohol or alcohol brands

⊗ Promoting events or places where people consume alcohol, including pubs and bars

⊗ Showing a video or image of someone drinking an alcoholic drink

Read in full                                                   ⧉

Done

60°F
Mostly cloudy

Q Search

11:14 AM
1/2/2026



Karen Young
Ad Account ID:

Open in Ads Manager

Your rejected ads
Review and track the status of your ads that were
You can fix the issues or request a review of multi

Available for review    In review

Filter by:    All campaigns    All poli

← **Why are you requesting a review?**
Select the main reason.

I'm not sure which policy my ad doesn't follow

I don't understand the policy

I believe my ad follows your policies

● Something else

The ad does not violate any policy.  This is not an ad for alcohol of any kind.  It is an ad for apple cider.

ⓘ Your case will be looked at again by our technology or review team. We'll use the additional info you give us to improve our systems.

Submit

Ad                                                              Action    Feedback

Post: **                                                                    Give feedback

                    Post: **
                    Ad set: Post: **    Alcohol    Oct 17, 2025 - Apr 1,
                                                    2020                    Give feedback

60°F
Mostly cloudy

Search

11:22 AM
1/2/2026



Karen Young
Ad Account ID:

Open in Ads Manager

**Your rejected ads**
Review and track the status of your ads that were
You can fix the issues or request a review of mult...

Available for review   0     In review   0

Filter by:   All campaigns      All po...              Last 90 days

Ad                                              Action               Feedback

Post: ""                                       Give Feedback

Post: ""          Post: ""          Alcohol                           Give Feedback

---

## Request review

What would you like us to review?

Only this rejected ad

All ads rejected for Alcohol in Post: ""

◉ All ads rejected for Alcohol in Post: ""

| Cancel | Continue |

---

60°F
Mostly cloudy

Search

11:20 AM
1/2/2026

EXHIBIT 1
(76 of 8)



EXHIBIT 1 (98 of 157)



**In review**

# You'll hear back from us within 2 days

Jan 2, 2026

Thanks for requesting a review.

We'll review your information and update you as soon as we can. Most people hear back in less than 2 days, but it can take longer.

Our technology or review team will check your ad against our rules. Your ad will remain restricted while we review your information.

We understand that this impacts your business. Our teams work hard to support businesses and resolve issues.

**What you need to know**

About this review  >

How reviews work  >

Information for people in the EU  >

Done





### In review

## You'll hear back from us within 2 days

Jan 2, 2026

Thanks for requesting a review.

We'll review your information and update you as soon as we can. Most people hear back in less than 2 days, but it can take longer.

Our technology or review team will check your ad against our rules. Your ad will remain restricted while we review your information.

We understand that this impacts your business. Our teams work hard to support businesses and resolve issues.

### What you need to know

About this review                                    >

How reviews work                                   >

Information for people in the EU                >

[ Done ]

60°F
Mostly cloudy

Search

11:22 AM
1/2/2026



EXHIBIT 2 / EXHIBIT - 2 A
(1 of 7)

☰  ∞ Meta

Back to Home

# How Meta enforces its policies

Meta uses technology and review teams to detect, review and take action on millions of pieces of content every day on Facebook and Instagram.

## Detecting violations ⊕

Technology and review teams help us detect and review potentially violating content and accounts.

**TECHNOLOGY**

How technology detects violations

How enforcement technology works

How Meta trains technology

How Meta invests in technology

**REVIEW TEAMS**

How review teams work

How technology helps prioritize review

The people behind Meta's review teams

How review teams are trained

Helping reviewers make the right calls

Reviewing high-visibility content accurately

How we assess and prepare for global risks

# Taking action 

We take a three-part approach to content enforcement: remove, reduce and inform.

**REMOVE**

Taking down violating content

Counting strikes

Restricting accounts

Restricting accounts of public figures during civil unrest

Disabling accounts

Removing Pages and groups

How we create and use market-specific slur lists

**REDUCE**

Reducing the distribution of problematic content

Penalties for sharing fact-checked content

**INFORM**

Providing context on sensitive or misleading content

EXHIBIT - 2A
( 3 of 7)

## ∞Meta

Policies                                                                    ^

**Community Standards**

**Meta Advertising Standards**

**Other policies**

**How Meta improves**

**Age-Appropriate Content**


Features                                                                    ⌄

Research tools                                                              ⌄

Enforcement                                                                ⌄

Governance                                                                 ⌄

Security                                                                    ⌄

Reports                                                                     ⌄


English (US)


Privacy Policy      Terms of Service      Cookies

How we enforce our policies | Transparency Center

EXHIBIT - 2A
( 4 of 7 )

EXHIBIT - 2A
( 5 of 7 )

☰ ⨯〇 Meta

‹ **Back to Detecting violations**

# The people behind Meta's review teams

**UPDATED** JAN 19, 2022

Meta's review teams consist of full-time employees who review content as part of a larger set of responsibilities, as well as content reviewers employed by our partners. They come from different backgrounds, reflect our diverse community and have an array of professional experiences—from veterans to legal specialists to enforcement experts in policy areas such as child safety, hate speech and counterterrorism.

We partner with companies that employ over 15,000 reviewers who help in doing the job of reducing harm. Our review teams are global and review content 24/7. We have over 20 sites around the world, where these teams can review content in over 50 languages.

As an essential branch of our content enforcement system, review teams must have language proficiency and cultural competency to do their job well.

## Language proficiency

To help us review content around the world, reviewers are proficient in the languages our community uses. For example, if someone reports a Tagalog-language post in the middle of the night in the Philippines, our system routes it to a Tagalog-speaking reviewer—either local or based in another time zone—for further review.

EXHIBIT - 2A
(6 of 7)

For some policy areas, such as adult nudity, content review is more straightforward, so language proficiency isn't required. In these cases, reviewers from around the world can review this content.

## Cultural competency

We have reviewers who know and understand the cultures represented across Meta technologies. For example, Spanish speakers from Mexico, not Spain, are hired to review content from Mexico. It's important that reviewers know the specific meanings of words, cultural context, local celebrities or the latest news stories to have the necessary context about a post and apply our policies accurately.

This is especially useful when it comes to different words for slurs across cultures. While we enforce our policy on slurs the same way everywhere, reviewers need to know the colloquial language that's considered an attack on a protected group in their region.

∞ Meta

Policies                                                               ^

Community Standards

Meta Advertising Standards

Other policies

How Meta improves

EXHIBIT – 2A
(7 of 7)

**Age-Appropriate Content**

Features                                                                                    ⌄

Research tools                                                                          ⌄

Enforcement                                                                              ⌄

Governance                                                                               ⌄

Security                                                                                      ⌄

Reports                                                                                       ⌄

English (US)

Privacy Policy          Terms of Service          Cookies

EXHIBIT — 2B
(1 of 7)

☰  ∞Meta

Back to Policies

# Community Standards

The Community Standards outline what is and isn't allowed on Facebook, Instagram, Messenger and Threads.

## Introduction

These standards are based on feedback from people and the advice of experts in fields like technology, public safety and human rights. To ensure everyone's voice is valued, we take great care to create standards that include different views and beliefs, especially from people and communities that might otherwise be overlooked or marginalized.

Every day, people use Facebook, Instagram, Messenger and Threads to share their experiences, connect with friends and family, and build communities. Our services enable billions of people to freely express themselves across countries and cultures and in dozens of languages.

Meta recognizes how important it is for Facebook, Instagram, Messenger and Threads to be places where people feel empowered to communicate, and we take our role seriously in keeping abuse off the service. That's why we developed standards for what is and isn't allowed on these services.

**Please note that the US English version of the Community Standards reflects the most up to date set of the policies and should be used as the primary document.**



# Our commitment to voice

The goal of our Community Standards is to create a place for expression and give people a voice. Meta wants people to be able to talk openly about the issues that matter to them, whether through written comments, photos, music, or other artistic mediums, even if some may disagree or find them objectionable. In some cases, we allow content—which would otherwise go against our standards—if it's newsworthy and in the public interest. We do this only after weighing the public interest value against the risk of harm, and we look to international human rights standards to make these judgments. In other cases, we may remove content that uses ambiguous or implicit language when additional context allows us to reasonably understand that the content goes against our standards.

Our commitment to expression is paramount, but we recognize the internet creates new and increased opportunities for abuse. For these reasons, when we limit expression, we do it in service of one or more of the following values:

*EXHIBIT — 2B*
*(3 of 7)*



## AUTHENTICITY

We want to make sure the content people see is authentic. We believe that authenticity creates a better environment for sharing, and that's why we don't want people using our services to misrepresent who they are or what they're doing.



## SAFETY

We're committed to making Facebook, Instagram, Messenger and Threads safe places. We remove content that could contribute to a risk of harm to the physical security of persons. Content that threatens people has the potential to intimidate, exclude or silence others and isn't allowed on our services.

EXHIBIT - 2
(4 of 7)



## PRIVACY

We're committed to protecting personal privacy and information. Privacy gives people the freedom to be themselves, choose how and when to share on our services and connect more easily.



## DIGNITY

We believe that all people are equal in dignity and rights. We expect that people will respect the dignity of others and not harass or degrade others.

# Community Standards

Our Community Standards apply to everyone, all around the world, and to all types of content, including AI-generated content.

Each section of our Community Standards starts with a "Policy Rationale" that sets out the aims of the policy followed by specific policy lines that outline:

> Content that's not allowed; and

> Content that requires additional information or context to enforce on, content that is allowed with a warning screen or content that is allowed but can only be viewed by adults aged 18 and older.

Coordinating Harm and Promoting Crime

Dangerous Organizations and Individuals

Fraud, Scams, and Deceptive Practices

Restricted Goods and Services

Violence and Incitement

Adult Sexual Exploitation

Bullying and Harassment

Child Sexual Exploitation, Abuse, and Nudity

Human Exploitation

Suicide, Self-Injury, and Eating Disorders

Adult Nudity and Sexual Activity

Adult Sexual Solicitation and Sexually Explicit Language

Hateful Conduct

Privacy Violations

Violent and Graphic Content

Account Integrity

Authentic Identity Representation

EXHIBIT - 2B
(6 of 7)

Cybersecurity

Inauthentic Behavior

Memorialization

Misinformation

Spam

Third-Party Intellectual Property Infringement

Using Meta Intellectual Property and Licenses

Additional Protection of Minors

Locally Illegal Content, Products, or Services

User Requests

∞ Meta

Policies                                                                                            ⌃

Community Standards

Meta Advertising Standards

Other policies

How Meta improves

Age-Appropriate Content

Features                                                                                            ⌄

Research tools                                                                                      ⌄

Enforcement

Governance    ⌄

Security    ⌄

Reports    ⌄

<u>English (US)</u>

<u>Privacy Policy</u>    <u>Terms of Service</u>    <u>Cookies</u>

*EXHIBIT - 2C*
*( 1 of 23)*

☰  ⋈ Meta

Back to Policies

# Introduction to the Advertising Standards

⌄ **Advertising Standards**

   1. Overview

# 1. Overview

## Understanding our Advertising Standards

Our Advertising Standards provide policy detail and guidance on the types of ad content we allow, and the types of ad content we prohibit. When advertisers place an order, each ad is reviewed against our policies. Our Advertising Standards also provide guidance on advertiser behavior that may result in advertising restrictions being placed on a Business Account or its assets (an ad account, Page or user account).

If you think your ad was mistakenly rejected, or if you think your Business Account or its assets were mistakenly restricted, you can request a review of either decision in Account Quality.

## Common points of confusion

To help you build a compliant and user-friendly ads experience, we've highlighted some common areas of confusion. Click the links below to learn more about:

- Privacy Violations and Personal Attributes
- Sexually suggestive content
- Advertising restrictions on business assets

*1/21/23*

EXHIBIT — 2C
( 2 OF 23)

## 2. Meta advertising policy principles

Advertisers contribute to the Meta community in many ways, including highlighting new products and services or drawing attention to events and issues. To help keep both businesses and organizations who use our ad tools safe, and create a welcoming environment for everyone who uses our products and services, we have put in place our Advertising Standards to guide what is allowed across Meta technologies.

Advertisers running ads across Meta technologies must follow our Community Standards and our Advertising Standards.

### Our advertising policy principles

Our policies are guided by our company's core values and the following principles:



**PROTECTING PEOPLE FROM UNSAFE AND DISCRIMINATORY PRACTICES**
Our policies require all advertisers to comply with the laws in their jurisdiction, not engage in discriminatory practices, and not sell illegal or unsafe substances.

1/9/26, 11:52 AM    Case 5:26-cv-00316-EKL    Introduction to Advertising Standards | Transparency Center Page 118 of 157 *EXHIBIT — 2C*

*(3 OF 23)*



## PROTECTING PEOPLE FROM FRAUD OR SCAMS

Our policies prohibit ads promoting products, services, schemes or offers using deceptive or misleading practices, including those meant to scam people out of money or personal information.



## PROMOTING POSITIVE USER EXPERIENCES

Because ads may be delivered to people in their Feed from Pages or accounts they don't follow, we want to help ensure that the ads don't detract from the overall experience across our technologies. For that reason, we prohibit ads containing shocking, sensational, or excessively violent content, certain adult content and profanity. We also prohibit other objectionable material, such as content implying or attempting to generate negative self-perception in order to promote diet, weight loss or other health related products.

EXHIBIT—2C
(4 OF 23)



**PROMOTING TRANSPARENCY**

We strive to make advertising more transparent and to give people more information about the ads they see. Our Ad Library offers a view of all ads currently running across our apps and services. It also offers additional information on ads about social issues, elections or politics, including range of spend, who saw the ad and the entities responsible for those ads. Ads about these topics are visible whether they're active or inactive and are stored in the Ad Library for 7 years. We also have an Info and Ads section on all Facebook Pages where people are able to click to see active ads a Page is running to help keep advertisers accountable.

## Enforcement of our policies

We use automated and, in some instances, manual review to enforce our policies. Beyond reviewing individual ads, we also monitor and investigate advertiser behavior, and may restrict advertiser accounts that don't follow our Advertising Standards, Community Standards or other Meta policies and terms. Our review process may not detect all policy violations, and ads remain subject to review and re-review and may be rejected for violating our policies at any time. It is an advertiser's responsibility to understand and comply with our policies outlined in Meta's Advertising Standards, our Terms of Service and any other applicable terms and guidelines, in addition to all local laws, regulations and, where applicable, self-regulatory advertising codes. Advertisers whose ads are rejected will typically be provided an opportunity to edit their ads in order to bring them into compliance

*EXHIBIT - 26 (5 of 23)*

and can request another review if they believe their ad was incorrectly rejected.

People can report ads if they believe they violate our policies. They can also see the details on why a certain ad appeared in their Feed, and they can control the ads they see in their Feed through our Ad Preferences tool.

# 3. The ad review process

Our ad review system relies primarily on automated tools to check ads and business assets against our policies. Our ad review process starts automatically before ads begin running, and is typically completed within 24 hours, although it may take longer in some cases. During this review, the status of the ad will be "In review." Additionally, ads may be reviewed again, including after they are live. You can find more information in our Business Help Center.

## What is reviewed

The ad review system reviews ads for violations of our policies. This review process may include the specific components of an ad, such as images, video, text and targeting information, as well as an ad's associated landing page or other destinations, among other information.

## Business asset review

We also review and take action on an advertiser's Business Account or its assets (ad accounts, Pages and user accounts). As part of our review, we assess whether the account or its assets have violated our policies.

Landing Page

Ad

## Outcome of review

If a violation is found at any point in the review process, the ad will be rejected, and the Business Account or its assets may be restricted. Lower quality ads which do not necessarily violate our policies may experience impacted performance. You can find more information about how quality may affect your ad in our Business Help Center.

If a Business Account or its assets (ad account, Page or user account) is restricted, that account or asset can't be used to advertise across our technologies. If a user account is restricted from advertising on a Business Account or ad account, other members of those accounts may still be able to advertise.

## Re-review of ads

Ads remain subject to review and re-review at all times, and may be rejected or restricted for violation of our policies at any time. It is your responsibility to understand and comply with our policies.

EXHIBIT — 2C
(7 of 23)

# 4. What to do if your ad is rejected or if your business asset is restricted

## Create a new ad or edit your ad

You may create a new ad or edit your ad to comply with our policies. These ads will be treated as new ads and reviewed by our ad review system. Check this page for underline editing steps.

## Request another review

If you believe the ad, ad account, user account, Page or Business Account was incorrectly rejected or restricted, you can request a review of the decision in Account Quality.



## Community Standards

The Community Standards outline what is not allowed across Meta technologies.

Community Standards

Ads must not violate our Community Standards.

**Learn more**

# Unacceptable content

Content that is illegal or otherwise considered unacceptable to people who use our technologies.

## Child Sexual Exploitation, Abuse, and Nudity

Ads must not contain content that sexually exploits or endangers children. When we become aware of apparent child exploitation, we report it to the National Center for Missing and Exploited Children (NCMEC), in compliance with applicable law.

**Learn more**

## Coordinating Harm and Promoting Crime

Ads must not facilitate, organize, promote or admit to certain criminal or harmful activities targeted at people, businesses, property or animals.

**Learn more**

## Dangerous Organizations and Individuals

Ads must not contain praise, support or representation of individuals or groups designated by Meta as Dangerous Organizations and Individuals.

**Learn more**

## Discriminatory Practices

Ads must not discriminate or encourage discrimination against people based on personal attributes such as race, ethnicity, color, national origin, religion, age, sex, sexual orientation, gender identity, family status, disability, medical or genetic condition.

Meta prohibits advertisers from using our ads products to discriminate against people. This means that advertisers may not (1) use our audience selection tools to (a) wrongfully target specific groups of people for advertising (see advertising policy on Targeting), or (b) wrongfully exclude specific groups of people from seeing their ads; or (2) include discriminatory content in their ads. Advertisers are also required to comply with applicable laws that prohibit discrimination (see advertising policy on Illegal Products or Services). These include laws that prohibit discriminating against groups of people in connection with, for example, offers of housing, employment, and financial products and services.

Any United States advertiser or advertiser targeting the United States, Canada or certain parts of Europe that is running financial products and services, housing or employment ads, must

*EXHIBIT — 2C*
*(9 or 23)*

self identify as a <u>Special Ad Category</u>, as it becomes available, and run such ads with approved targeting options.

Additional information and resources on United States non-discrimination laws:
U.S. Department of Housing and Urban Development
U.S. Equal Employment Opportunity Commission
Consumer Financial Protection Bureau
American Civil Liberties Union
Leadership Conferences on Civil and Human Rights
Department of Justice – Civil Rights Division
National Fair Housing Alliance

Disclaimer: This guide is not a substitute for legal advice. Consult a legal professional for specific advice about your situation.

**<u>Learn more</u>**

## Hateful Conduct

Ads must not attack people on the basis of what we call protected characteristics: race, ethnicity, national origin, disability, religious affiliation, caste, sexual orientation, sex, gender identity and serious disease.

**<u>Learn more</u>**

## Human Exploitation

Ads must not contain content that facilitates or coordinates the exploitation of humans, including human trafficking.

**<u>Learn more</u>**

## Locally Illegal Content, Products or Services

Ads that are reported by a government, a court order, non-governmental organizations or members of the public as violating local law may be removed.

**<u>Learn more</u>**

## Misinformation

Ads Must Comply with the Community Standard on <u>Misinformation</u>.

Meta prohibits ads that include content debunked by third-party fact checkers. Advertisers that repeatedly post information deemed to be false may have restrictions placed on their

1/9/26, 11:52 AM
Case 5:26-cv-00316-EKL    Document 1    Filed 01/12/26    Page 125 of 157
Introduction to the Advertising Standards | Transparency Center

*EXHIBIT — 2C
(10 of 33*

ability to advertise across Meta technologies. Find out more about our <u>fact-checking program</u>. Meta also prohibits ads that include misinformation that violates our <u>Community Standards</u>.

**Learn more**

## Vaccine Discouragement

Ads must not discourage people from vaccination or advocate against vaccines.

**Learn more**

# Fraud, Scams, and Deceptive Practices

Content that may deceive or mislead people.

Fraud, Scams and Deceptive Practices

Ads Must Comply with the Community Standard on <u>Fraud, Scams and Deceptive Practices</u>.

**Learn more**

Unacceptable Business Practices

Ads must not promote products, services, schemes or offers using identified deceptive or misleading practices, including those meant to scam people out of money or personal information.

**Learn more**

# Restricted goods and services

1/9/26, 11:52 AM    Case 5:26-cv-00316-EKL    Introduction to the Advertising Standards | Transparency Center    Page 126 of 157    EXHIBIT — 2C

(11 of 23)

Content that may negatively impact people's health and safety.

## Alcohol

Ads that promote or reference alcohol must comply with all applicable local laws, required or established industry codes, guidelines, licenses and approvals, and include age and country targeting criteria consistent with Meta's targeting requirements and applicable local laws. Note that our policies prohibit ads promoting or referencing alcohol in some countries, based on local law.

Advertisers must follow all applicable laws, including targeting their ads in accordance with legal requirements. At a minimum, ads may not be targeted to people under 18 years of age.

**Learn more**

## Commercial Exploitation of Crises and Controversial Events

Ads must not contain content that exploits crises or controversial events for commercial purposes.

**Learn more**

## Dating Ads

Ads for dating services are only allowed with prior written permission. These must adhere to the dating targeting requirements and our dating ad guidelines. Details on the requirements for permission can be found here. In order to seek permission, please fill out this form to begin your application process.

**Learn more**

## Hazardous Goods and Materials

Ads must not promote the sale of hazardous goods and materials. Advertisers must follow our Community Standards, in addition to our Advertising Standards.

**Learn more**

## Health and Wellness

This policy covers two categories of ads: Weight Loss and Cosmetic Products and Procedures, and Adult Products and Reproductive Health.

**Weight Loss and Cosmetic Products and Procedures**

Ads promoting or marketing dietary, health or weight loss products and services must be

EXHIBIT — 2C
(12 of 23)

targeted to people at least 18 years or older.

Ads promoting or marketing cosmetic products, procedures or surgeries, must be targeted to people at least 18 years or older.

Ads must not imply or attempt to generate negative self-perception or declare there is a perfect body type or appearance one should aspire to in order to promote diet, weight loss, cosmetic procedures or any other health-related products.

**Learn more**

## Historical Artifacts

Ads must not promote the sale of historic artifacts.

Advertisers must follow our Community Standards, in addition to our Advertising Standards.

**Learn more**

## Sale of Human Body Parts and Bodily Fluids

Ads must not promote the sale of human body parts or fluids.

Advertisers must follow our Community Standards, in addition to our Advertising Standards.

**Learn more**

## Sale of Non-Endangered Animals and Endangered Species

Ads must not promote, donate, or gift products derived from threatened or extinct or endangered species. This includes both wildlife and plants.

Ads must not promote peer-to-peer sales or trade of live non-endangered animals, including ambiguous contexts where the nature of the sale or trade is unclear.

Ads may offer live non-endangered animals solely within the context of donations, rehoming, or adoptions.

Advertisers must follow our Community Standards, in addition to our Advertising Standards.

**Learn more**

## Tobacco and Related Products

Ads must not promote the sale or use of tobacco or nicotine products and related paraphernalia. Ads must not promote Electronic Nicotine delivery devices, such as electronic

cigarettes, vaporizers, or any other products that simulate smoking or are otherwise designed for use with tobacco or nicotine products. Ads may only promote cessation products approved by either the World Health Organization or the U.S. Food and Drug Administration, and must comply with all applicable local laws, required or established industry codes and guidelines.

**Learn more**

## Weapons, Ammunition or Explosives

Ads must not promote the sale or use of weapons, ammunition or explosives. This includes ads for weapon modification accessories.

**Learn more**

## Drugs and Pharmaceuticals

Advertisers can't run ads that promote the sale or use of illicit or recreational drugs, or other unsafe substances, products or supplements, as determined by Meta at its sole discretion. Ads promoting prescription drugs, over-the-counter medicines, and cannabis derived products must follow specific requirements outlined in the policy below.

Advertisers running ads across Meta technologies must follow our Community Standards, in addition to our Advertising Standards.

**Learn more**

## Drug and Alcohol Addiction Treatment

Meta requires advertisers who wish to run addiction treatment ads targeting people in the United States to be certified with LegitScript and apply to Meta for permission to advertise.

Advertisers can apply for certification with LegitScript here.

**Learn more**

## Financial and Insurance Products and Services

Ads promoting credit cards, loans or insurance services must be targeted to people 18 years or older and must not directly request the input of any personally identifiable information or certain types of financial information.

*EXHIBIT — 2C (14 or 23)*

Advertisers promoting financial products and services must demonstrate they are authorized by the relevant regulatory authorities where this is a requirement; and any such authorization may be subject to review by Meta. Advertisers are also required to comply with disclosure requirements set by law.

Learn more about the authorization process in our <u>Business Help Center</u>.

**<u>Learn more</u>**

## Cryptocurrency Products and Services

Ads may not promote cryptocurrency trading platforms, software and related services and products that enable monetisation, reselling, swapping or staking of cryptocurrencies without prior written permission. To apply, please click <u>here</u>. For more information, see our <u>Business Help Center</u>.

**<u>Learn more</u>**

## Online Gambling and Games

Meta defines online gambling and games as any product or service where anything of monetary value is included as part of a method of entry and prize. Ads that promote online gambling and gaming are only allowed with our prior written permission. Authorized advertisers must follow all applicable laws and include targeting criteria consistent with Meta's targeting requirements. At a minimum, ads may not be targeted to people under 18 years of age. Learn more in our <u>Business Help Center</u>.

**<u>Learn more</u>**

# Objectionable content

Content that may lead to negative experiences.

## Adult Nudity and Sexual Activity

Ads Must Comply with the Community Standards on Adult Nudity and Sexual Activity. Ads must not contain adult nudity and sexual activity. This includes nudity, depictions of people in

*EXHIBIT — 2 C*
*(15 of 23)*

explicit or sexually suggestive positions, or activities that are sexually suggestive.

Learn more

## Adult Sexual Exploitation

Ads Must Comply with the Community Standard on Adult Sexual Exploitation. Ads must not display, advocate for, or coordinate sexual acts with non-consenting parties to avoid facilitating non-consensual sexual acts.

Learn more

## Adult Sexual Solicitation and Sexually Explicit Language

Ads must not contain content that facilitates sexual encounters, commercial sexual services between adults, or content asking for or offering pornographic content. In addition, we also restrict the use of sexually explicit language.

Learn more

## Bullying and Harassment

Ads must not contain attacks that are meant to degrade or shame public and private individuals. We also provide heightened protections for anyone under the age 18, regardless of their user status.

Learn more

## Profanity

Ads must not contain profanity.

Learn more

## Privacy Violations and Personal Attributes

Ads Must Comply with the Community Standard on Privacy Violations.

Ads must not contain content that shares or asks for private information about users. In addition, ads must not contain content that asserts or implies personal attributes. This includes direct or indirect assertions or implications about a person's race, ethnicity, religion, beliefs, age, sexual orientation or practices, gender identity, disability, physical or mental health (including medical conditions), vulnerable financial status, voting status, membership in a trade union, criminal record, or name.

Learn more

*EXHIBIT — 2c*
*( 16 of 23)*

## Violent and Graphic Content

Ads must not contain shocking, sensational or excessively violent content.

**Learn more**

## Suicide, Self-Injury, and Eating Disorders

Ads Must Comply with the Community Standard on Suicide, Self-Injury, and Eating Disorders. Ads must not encourage suicide, self-injury, or eating disorders, including fictional content such as memes or illustrations and any such content which is graphic, regardless of context. In addition, Ads must not mock victims or survivors of suicide, self-injury or eating disorders, as well as real time depictions of suicide, self-injury, or eating disorders.

**Learn more**

# Intellectual property infringement

Content that infringes upon or violates the intellectual property rights of a third party or Meta.

### Third-Party Intellectual Property Infringement

Ads may not contain content that violates the intellectual property rights of any third party, including copyright, trademark or other legal rights. This includes, but is not limited to, the promotion or sale of counterfeit goods, such as products that copy the trademark (name or logo) and/or distinctive features of another company's products to imitate a genuine product.

**Learn more**

### Using Meta Intellectual Property Licenses

Ads Must Comply with the Community Standard on Using Meta Intellectual Property and Licenses.

Ads must not use Meta Intellectual Property and Licenses in a manner that violates the Community Standards and guidelines in the Brand Resource Center.

**Learn more**

# Social issue, electoral or political advertising

Content that promotes social issue, electoral or political views.

## Ads about Social Issues, Elections or Politics

Advertisers can run ads about social issues, elections or politics, provided the advertiser complies with all applicable laws and the authorization process required by Meta. Meta may restrict issue, electoral or political ads. In addition, certain content related to elections may be prohibited by local law or removed in specific regions ahead of voting; click here for more.

**Learn more**

# Product and format-specific policies

Content associated with additional format-specific requirements.

## Video Ads

Video ads and other dynamic ad types must comply with all of the rules listed in these Advertising Standards, including the Community Standards, as well as the policies below:

1. **Disruptive Content**

   Videos and other similar ad types must not use overly disruptive tactics, such as flashing screens.

EXHIBIT — 2C
( 18 of 23)

## 2. Entertainment Related Restrictions

Ads for movie trailers, TV shows, video game trailers and other similar content are only allowed with prior written permission from Meta and must target people who are 18 years or older. Excessive depictions of the following content within these ads are not allowed:

- Drugs and alcohol use
- Adult content
- Profanity
- Violence and gore

## Lead Ads

Advertisers must not create lead ads questions to request the following types of information without our prior written permission.

**Learn more**                                                                                      +

## Targeting

1. Advertisers must not use targeting options to discriminate against, harass, provoke, or disparage people or to engage in predatory advertising practices.

2. If advertisers target their ads to custom audiences, they must comply with the underlined applicable terms when creating an audience.

## Relevance

1. Ads must clearly represent the company, product, service, or brand that is being advertised.

2. All ad components, including any text, images or other media, must be relevant to the product or service being offered.

3. The products and services promoted in an ad must match those promoted on the landing page. Learn more about ad quality best practices that can improve ad performance.

## Branded Content

EXHIBIT — 2C
(19 of 23)

Ads promoting branded content must tag the featured third party product, brand or business partner using the branded content tool. Branded content within ads is defined as a creator or publisher's content that features or is influenced by a business partner for an exchange of value. When promoting branded content integrations, advertisers must use the branded content tool (please learn more <u>here</u> on how to tag the featured third party product, brand or business partner).



# Advertising policies affecting business assets

Beyond rejecting ads that violate our policies, we also review and take action, such as restricting the ability to advertise, on an advertiser's Business Account or its assets, such as ad accounts, Pages and user accounts for violating the below policies. If you believe your ad account, user account, Page or Business Account was incorrectly restricted, you can <u>request a review</u> of the decision in <u>Account Quality</u>

## Account Integrity

Business assets must comply with the Community Standard on <u>Account Integrity</u>.

**<u>Learn more</u>**

## Inauthentic Behavior

Business assets must comply with the Community Standard on <u>Inauthentic Behavior</u>.

**<u>Learn more</u>**

## Cybersecurity

*EXHIBIT – 2C*
*(20 of 23)*

Ads must comply with the Community Standard on <u>Cybersecurity</u>.

Ads must not use phishing or social engineering techniques to capture others' sensitive information, and must not promote or link to malicious code – such as malware or spyware.

**Learn more**

Spam

Ads must comply with the Community Standard on <u>Spam</u>.

**Learn more**

User Requests

Requests for Removal of Business Assets must comply with the Community Standard on <u>User Requests</u>.

**Learn more**

# Data use restrictions

1. Ensure any ad data collected, received or derived from your Facebook or Instagram ad ("Meta advertising data") is only shared with someone acting on your behalf, such as your service provider. You are responsible for ensuring your service providers protect any Meta advertising data or any obtained from us, limit their use of all of that information, and keep it confidential and secure.

2. Don't use Meta advertising data for any purpose (including retargeting, commingling data across multiple advertisers' campaigns, or allowing piggybacking or redirecting with tags), except on an aggregate and anonymous basis (unless authorized by Meta) and only to assess the performance and effectiveness of your Meta advertising campaigns.

3. Don't use Meta advertising data, including the targeting criteria for your ad, to build, append to, edit, influence, or augment user profiles, including profiles associated with any mobile device identifier or other unique identifier that identifies any particular user, browser, computer or device.

4. Don't transfer any Meta advertising data (including anonymous, aggregate, or derived data) to any ad network, ad exchange, data broker or other advertising or monetization related service.

# Things you should know

1. The Advertising Policies apply to (1) ads and commercial content served by or purchased through Meta, on or off the Meta services, including ads purchased under AAAA/IAB Standard Terms and Conditions, (2) ads appearing within apps on Meta, and (3) ads on Instagram. Your use of Meta's advertising products and services is part of "Meta" under Meta's Statement of Rights and Responsibilities (https://www.facebook.com/legal/terms, the "SRR") and is subject to the SRR. You may be subject to additional terms or guidelines if you use Instagram or certain Meta advertising-related products or services.

2. Advertisers are responsible for understanding and complying with all applicable laws and regulations. Failure to comply may result in a variety of consequences, including the cancellation of ads you have placed and termination of your account.

3. We do not use sensitive personal data for ad targeting. Topics you choose for targeting your ad don't reflect the personal beliefs, characteristics or values of the people who use Facebook or Instagram.

4. Once displayed, ads are public information. Ads may be re-shared and accessed outside of the targeted audience, including from the Facebook Page running the ads or within Meta Products. If users have interacted with your ad, your ad may remain on Meta products (for example, shared until the users delete it or visible to users through their account tools). If your ad is a political ad, it will be displayed in our Ad Library. This means that Meta may display (at no cost to you) and provide access to the ad content and creative, as well as information about the ad campaign (such as total spend and delivery data) for a period of seven (7) years from the completion of your order. Meta may disclose your advertising content, and all information associated with your advertising, to a governmental entity or body if Meta believes that disclosure would assist in a lawful investigation.

5. If you are managing ads on behalf of other advertisers, each advertiser or client must be managed through separate ad accounts. You must not change the advertiser or client associated with an established ad account; set up a new account. You are responsible for ensuring that each advertiser complies with these Advertising Policies. In addition, if you are

(22 of 23)

managing ads on behalf of other advertisers you must also comply with our <u>Ads policies</u> that apply to all ad buying solutions.

6. As stated in our <u>Community Standards</u>, you must not sell, rent, buy or exchange site privileges, such as administrative access, for assets that belong to you or that you manage. Helping anyone evade or circumvent our enforcement of our policies or terms of service is also prohibited.

7. We reserve the right to reject, approve or remove any ad for any reason, in our sole discretion, including ads that negatively affect our relationship with our users or that promote content, services, or activities, contrary to our competitive position, interests, or advertising philosophy.

8. For policies that require prior written permission, <u>Meta</u> may grant these permissions.

9. These policies are subject to change at any time without notice.

# Transparency requirements under the EU Digital Services Act

Meta is required by EU law to ensure that its users located in the EU, and associated territories, are able to identify certain information about each ad that they see, including information about the natural or legal person on whose behalf the advertisement is presented and the natural or legal person who is paying for the ad (if different).

In order for Meta to be able to meet its obligations, when creating an ad, you are required to provide the following information in the associated text fields:

- **Beneficiary field**: the full legal name of the person, company, business, charity or institution on whose behalf your ad is being presented.
- **Payor field (if different from above)**: the full legal name of the person, company, business, charity or institution who paid for the ad.

You are responsible for ensuring that this information is complete, accurate and up-to-date for each ad that you submit to Meta, and that it remains so for the entirety of the period during which the ad is running.

<u>Learn more</u>.

*EXHIBIT - JC*
*(23 of 23)*

∞ Meta

Policies                                                    ︿

   Community Standards

   Meta Advertising Standards

   Other policies

   How Meta improves

   Age-Appropriate Content


Features                                                    ⌄

Research tools                                              ⌄

Enforcement                                                 ⌄

Governance                                                  ⌄

Security                                                    ⌄

Reports                                                     ⌄


English (US)


Privacy Policy        Terms of Service        Cookies

EXHIBIT - 2 D
( 1 of 13)

## ∞ Meta

# Terms of Service

**Explore the policy**

Overview                                                                    ⌄

1. The services we provide                                                  ⌄

2. How our services are funded                                              ⌄

3. Your commitments to Facebook and our community                           ⌄

4. Additional provisions                                                    ⌄

5. Other terms and policies that may apply to you                           ⌄


## Overview

Effective January 1, 2025

Meta builds technologies and services that enable people to connect with each other, build communities, and grow businesses. These Terms of Service (the "Terms") govern your access and use of Facebook, Messenger, and the other products, websites, features, apps, services, technologies, and software we offer (the Meta Products or Products), except where we expressly state that separate terms (and not these) apply. (For example, your use of Instagram is subject to the Instagram Terms of Use). These Products are provided to you by Meta Platforms, Inc. These Terms therefore constitute an agreement between you and Meta Platforms, Inc. If you do not agree to these Terms, then do not access or use Facebook or the other products and services covered by these Terms.

These Terms (formerly known as the Statement of Rights and Responsibilities) make up the entire agreement between you and Meta Platforms, Inc. regarding your use of our Products. They supersede any prior agreements.

We don't charge you to use Facebook or the other products and services covered by these Terms, unless we state otherwise. Instead, businesses and organizations, and other persons pay us to show you ads for their products and services. By using our Products, you agree that we can show you ads that we think may be relevant to you and your interests. We use your personal data to help determine which personalized ads to show you.

We don't sell your personal data to advertisers, and we don't share information that directly identifies you (such as your name, email address or other contact information) with advertisers unless you give us specific permission. Instead, advertisers

*EXHIBIT - 2b*
*(2 of 13)*

can tell us things like the kind of audience they want to see their ads, and we show those ads to people who may be interested. We provide advertisers with reports about the performance of their ads that help them understand how people are interacting with their content. See Section 2 below to learn more about how personalized advertising under these terms works on the Meta Products.

Our Privacy Policy explains how we collect and use your personal data to determine some of the ads you see and provide all of the other services described below. You can also go to your settings pages of the relevant Meta Product at any time to review the privacy choices you have about how we use your data.

What Products do these Terms cover?                                       ↗

# 1. The services we provide

Our mission is to give people the power to build community and bring the world closer together. To help advance this mission, we provide the Products and services described below to you:

## 1.1 Provide a personalized experience for you:

Your experience on Facebook is unlike anyone else's: from the posts, stories, events, ads, and other content you see in Facebook Feed or our video platform to the Facebook Pages you follow and other features you might use, such as Facebook Marketplace, and search. For example, we use data about the connections you make, the choices and settings you select, and what you share and do on and off our Products - to personalize your experience.

## 1.2 Connect you with people and organizations you care about:

We help you find and connect with people, groups, businesses, organizations, and others that matter to you across the Meta Products you use. We use data to make suggestions for you and others - for example, groups to join, events to attend, Facebook Pages to follow or send a message to, shows to watch, and people you may want to become friends with. Stronger ties make for better communities, and we believe our services are most useful when people are connected to people, groups, and organizations they care about.

## 1.3 Empower you to express yourself and communicate about what matters to you:

There are many ways to express yourself on Facebook to communicate with friends, family, and others about what matters to you - for example, sharing status updates, photos, videos, and stories across the Meta Products (consistent with your settings),

*EXHIBIT —2D*
*(3 OF (3)*

sending messages or making voice or video calls to a friend or several people, cre-
ating events or groups, or adding content to your profile as well as showing you in-
sights on how others engage with your content. We have also developed, and con-
tinue to explore, new ways for people to use technology, such as augmented reality
and 360 video to create and share more expressive and engaging content on Meta
Products.

## 1.4 Help you discover content, products, and services that may interest you:

We show you personalized ads, offers, and other sponsored or commercial content
to help you discover content, products, and services that are offered by the many
businesses and organizations that use Facebook and other Meta Products. Section
2 below explains this in more detail.

## 1.5 Promote the safety, security, and integrity of our ser-vices, combat harmful conduct and keep our community of users safe:

People will only build community on Meta Products if they feel safe and secure. We
work hard to maintain the security (including the availability, authenticity, integrity,
and confidentiality) of our Products and services. We employ dedicated teams
around the world, work with external service providers, partners and other relevant
entities and develop advanced technical systems to detect potential misuse of our
Products, harmful conduct towards others, and situations where we may be able to
help support or protect our community, including to respond to user reports of poten-
tially violating content. If we learn of content or conduct like this, we may take appro-
priate action based on our assessment that may include - notifying you, offering
help, removing content, removing or restricting access to certain features, disabling
an account, or contacting law enforcement. We share data across Meta Companies
when we detect misuse or harmful conduct by someone using one of our Products
or to help keep Meta Products, users and the community safe. For example, we
share information with Meta Companies that provide financial products and services
to help them promote safety, security and integrity and comply with applicable law.
Meta may access, preserve, use and share any information it collects about you
where it has a good faith belief it is required or permitted by law to do so. For more
information, please review our Privacy Policy.

In some cases, the Oversight Board may review our decisions, subject to its terms
and bylaws. Learn more here.

## 1.6 Use and develop advanced technologies to provide safe and functional services for everyone:

We use and develop advanced technologies - such as artificial intelligence, machine
learning systems, and augmented reality - so that people can use our Products
safely regardless of physical ability or geographic location. For example, technology

EXHIBIT —2b
(4 of 13)

like this helps people who have visual impairments understand what or who is in photos or videos shared on Facebook or Instagram. We also build sophisticated network and communication technology to help more people connect to the internet in areas with limited access. And we develop automated systems to improve our ability to detect and remove abusive and dangerous activity that may harm our community and the integrity of our Products.

## 1.7 Research ways to make our services better:

We engage in research to develop, test, and improve our Products. This includes analyzing data we have about our users and understanding how people use our Products, for example by conducting surveys and testing and troubleshooting new features. Our Privacy Policy explains how we use data to support this research for the purposes of developing and improving our services.

## 1.8 Provide consistent and seamless experiences across the Meta Company Products:

Our Products help you find and connect with people, groups, businesses, organizations, and others that are important to you. We design our systems so that your experience is consistent and seamless across the different Meta Company Products that you use. For example, we use data about the people you engage with on Facebook to make it easier for you to connect with them on Instagram or Messenger, and we enable you to communicate with a business you follow on Facebook through Messenger.

## 1.9 Ensuring access to our services:

To operate our global services and enable you to connect with people around the world, we need to transfer, store and distribute content and data to our data centers, partners, service providers, vendors and systems around the world, including outside your country of residence. The use of this global infrastructure is necessary and essential to provide our services. This infrastructure may be owned, operated, or controlled by Meta Platforms, Inc., Meta Platforms Ireland Limited, or its affiliates.

# 2. How our services are funded

Instead of paying to use Facebook and the other products and services we offer, by using the Meta Products covered by these Terms, you agree that we can show you personalized ads and other commercial and sponsored content that businesses and organizations pay us to promote on and off Meta Company Products. We use your personal data, such as information about your activity and interests, to show you personalized ads and sponsored content that may be more relevant to you.

Protecting people's privacy is central to how we've designed our personalized ads system. This means that we can show you relevant and useful ads without telling

advertisers who you are. We don't sell your personal data. We allow advertisers to tell us things like their business goal, and the kind of audience they want to see their ads (for example, people between the age of 18-35 who like cycling). We then show their ad to people who we think might be interested.

We also provide advertisers with reports about the performance of their ads to help them understand how people are interacting with their content on and off Meta Products. For example, we provide general demographic and interest information to advertisers to help them better understand their audience, like the fact that women between the ages of 25 and 34 who live in Madrid and like software engineering have seen an ad. We don't share information that directly identifies you (information such as your name or email address that by itself can be used to contact you or identifies who you are) unless you give us specific permission. Learn more about how Meta ads work here.

We collect and use your personal data in order to provide the services described above to you. You can learn about how we collect and use your data in our Privacy Policy. You have controls over the types of ads and advertisers you see, and the types of information we use to determine which ads we show you. Learn more.

# 3. Your commitments to Facebook and our community

We provide these services to you and others to help advance our mission. In exchange, we need you to make the following commitments:

## 3.1 Who can use Facebook

When people stand behind their opinions and actions, our community is safer and more accountable. For this reason, you must:

- Provide for your account the same name that you use in everyday life.

- Provide accurate information about yourself.

- Create only one account (your own) and use it for personal purposes.

- Not share your password, give access to your Facebook account to others, or transfer your account to anyone else (without our permission).

We try to make Facebook broadly available to everyone, but you cannot use Facebook if:

- You are under 13 years old.

- You are a convicted sex offender.

EXHIBIT - 2D
( 6 of 13 )

- We've previously disabled your account for violations of our Terms, the Community Standards, or other terms and policies that apply to your use of Facebook. If we disable your account for a violation of our Terms, the Community Standards, or other terms and policies, you agree not to create another account without our permission. Receiving permission to create a new account is provided at our sole discretion, and does not mean or imply that the disciplinary action was wrong or without cause.

- You are prohibited from receiving our products, services, or software under applicable laws.

## 3.2 What you can share and do on Meta Products

We want people to use Meta Products to express themselves and to share content that is important to them, but not at the expense of the safety and well-being of others or the integrity of our community. You therefore agree not to engage in the conduct described below (or to facilitate or support others in doing so):

1. You may not use our Products to do or share anything:

   - That violates these Terms, the Community Standards, or other terms and policies that apply to your use of our Products.

   - That is unlawful, misleading, discriminatory or fraudulent (or assists someone else in using our Products in such a way).

   - That you do not own or have the necessary rights to share.

   - That infringes or violates someone else's rights, including their intellectual property rights (such as by infringing another's copyright or trademark, or distributing or selling counterfeit or pirated goods), unless an exception or limitation applies under applicable law.

2. You may not upload viruses or malicious code, use the services to send spam, or do anything else that could disable, overburden, interfere with, or impair the proper working, integrity, operation, or appearance of our services, systems, or Products.

3. You may not access or collect data from our Products using automated means (without our prior permission) or attempt to access data you do not have permission to access, regardless of whether such automated access or collection is undertaken while logged-in to a Facebook account.

4. You may not proxy, request, or collect Product usernames or passwords, or misappropriate access tokens.

5. Except as provided in the Platform Terms, you may not sell, license, or purchase any data obtained from us or our services, regardless of whether such data was obtained while logged-in to a Facebook account.

6. You may not misuse any reporting, flagging, dispute, or appeals channel, such as by making fraudulent, duplicative, or groundless reports or appeals.

7. You may not do, or attempt to do, anything to circumvent, bypass, or override any technological measures that Meta uses to control or limit access to our Products or data.

We can remove or restrict access to content that is in violation of these provisions. We can also suspend or disable your account for conduct that violates these provisions, as provided in Section 4.2.

If we remove content that you have shared in violation of the Community Standards, we'll let you know and explain any options you have to request another review, unless you seriously or repeatedly violate these Terms or if doing so may expose us or others to legal liability; harm our community of users; compromise or interfere with the integrity or operation of any of our services, systems or Products; where we are restricted due to technical limitations; or where we are prohibited from doing so for legal reasons. For information on account suspension or termination, see Section 4.2 below.

We work with independent fact-checkers in many jurisdictions to combat misinformation. When content has been rated by fact-checkers, we may add a notice to provide additional context. You can find more information about fact-checking here.

To help support our community, we encourage you to report content or conduct that you believe violates your rights (including intellectual property rights) or our terms and policies, if this feature exists in your jurisdiction. We also can remove or restrict access to content, features, services, or information if we determine that doing so is reasonably necessary to avoid or mitigate misuse of our services or adverse legal or regulatory impacts to Meta.

## 3.3 The permissions you give us

We need certain permissions from you to provide our services:

**1. Your content:** Some content that you share or upload, such as photos or videos, may be protected by intellectual property laws.

You retain ownership of the intellectual property rights (things like copyright or trademarks) in any such content that you create and share on Facebook and other Meta Company Products you use. Nothing in these Terms takes away the rights you have to your own content. You are free to share your content with anyone else, wherever you want.

However, to provide our services we need you to give us some legal permissions (known as a "license") to use this content. This is solely for the purposes of providing and improving our Products and services as described in Section 1 above.

*EXHIBIT —2 D
( 8 of 13)*

**2. Permission to use content you create and share:** Specifically, when you share, post, or upload content that is covered by intellectual property rights on or in connection with our Products, you grant us a non-exclusive, transferable, sub-licensable, royalty-free, and worldwide license to host, use, distribute, modify, run, copy, publicly perform or display, translate, and create derivative works of your content (consistent with your privacy and application settings). This means, for example, that if you share a photo on Facebook, you give us permission to store, copy, and share it with others (again, consistent with your settings) such as Meta Products or service providers that support those products and services. This license will end when your content is deleted from our systems.

**3. Deleting Your Content:** You can delete individual content you share, post, and upload at any time. In addition, all content posted to your personal account will be deleted if you delete your account. Learn more about how to delete your account. Account deletion does not automatically delete content that you post as an admin of a page or content that you create collectively with other users, such as photos in Shared Albums which may continue to be visible to other album members.

It may take up to 90 days to delete content after we begin the account deletion process or receive a content deletion request. If you send content to trash, the deletion process will automatically begin in 30 days unless you chose to delete the content sooner. While the deletion process for such content is being undertaken, the content is no longer visible to other users. After the content is deleted, it may take us up to another 90 days to remove it from backups and disaster recovery systems.

Content will not be deleted within 90 days of the account deletion or content deletion process beginning in the following situations:

- where your content has been used by others in accordance with this license and they have not deleted it (in which case this license will continue to apply until that content is deleted);

- where deletion within 90 days is not possible due to technical limitations of our systems, in which case, we will complete the deletion as soon as technically feasible; or

- where immediate deletion would restrict our ability to:

  - investigate or identify illegal activity or violations of our terms and policies (for example, to identify or investigate misuse of our Products or systems);

  - protect the safety, integrity, and security of our Products, systems, services, our employees, and users, and to defend ourselves;

  - comply with legal obligations for the preservation of evidence, including data Meta Companies providing financial products and services preserve to comply with any record keeping obligations required by law; or

  - comply with a request of a judicial or administrative authority, law enforcement or a government agency;

*EXHIBIT — 2D*
*(9 OF 13)*

in which case, the content will be retained for no longer than is necessary for the purposes for which it has been retained (the exact duration will vary on a case-by-case basis).

In each of the above cases, this license will continue until the content has been fully deleted.

**4. Permission to use your name, profile picture, and information about your actions with ads and sponsored or commercial content:** You give us permission to use your name and profile picture and information about actions you have taken on Facebook next to or in connection with ads, offers, and other sponsored or commercial content that we display across our Products, without any compensation to you. For example, we may show your friends that you are interested in an advertised event or have liked a Facebook Page created by a brand that has paid us to display its ads on Facebook. Ads and content like this can be seen only by people who have your permission to see the actions you've taken on Meta Products. You can learn more about your ad settings and preferences.

**5. Permission to update software you use or download:** If you download or use our software, you give us permission to download and install updates to the software where available.

## 3.4 Limits on using our intellectual property

If you use content covered by intellectual property rights that we have and make available in our Products (for example, images, designs, videos, or sounds we provide that you add to content you create or share on Facebook), we retain all rights to that content (but not yours). You can only use our copyrights or trademarks (or any similar marks) as expressly permitted by our Brand Usage Guidelines or with our prior written permission. You must obtain our written permission (or permission under an open source license) to modify, translate, create derivative works of, decompile, or reverse engineer our products or their components, or otherwise attempt to extract source code from us, unless an exception or limitation applies under applicable law or your conduct relates to the Meta Bug Bounty Program. We reserve all rights not expressly granted to you.

# 4. Additional provisions

## 4.1 Updating our Terms

We work constantly to improve our services and develop new features to make our Products better for you and our community. As a result, we may need to update these Terms from time to time to accurately reflect our services and practices, to promote a safe and secure experience on our Products and services, and/or to comply with applicable law. Unless otherwise required by law, we will notify you before we make changes to these Terms and give you an opportunity to review them be-

fore they go into effect. Once any updated Terms are in effect, you will be bound by
them if you continue to access or use our Products.

We hope that you will continue using our Products, but if you do not agree to our up-
dated Terms or wish to terminate your agreement to this contract, you can delete
your account at any time and you must also stop accessing, or using Facebook and
the other Meta Products.

## 4.2 Account suspension or termination

We want Facebook to be a place where people feel welcome and safe to express
themselves and share their thoughts and ideas. If we determine, in our discretion,
that you have clearly, seriously or repeatedly breached our Terms or Policies, includ-
ing in particular the Community Standards, we may suspend or permanently disable
your access to Meta Company Products, and we may permanently disable or delete
your account. We may also disable or delete your account if you repeatedly infringe
other people's intellectual property rights or where we are required to do so for legal
reasons.

We may disable or delete your account if after registration your account is not con-
firmed, your account is unused and remains inactive for an extended period of time,
or if we detect someone may have used it without your permission and we are un-
able to confirm your ownership of the account. Learn more about how we disable
and delete accounts.

Where we take such action we'll let you know and explain any options you have to
request a review, unless doing so may expose us or others to legal liability; harm
our community of users; compromise or interfere with the integrity or operation of
any of our services, systems or Products; where we are restricted due to technical
limitations; or where we are prohibited from doing so for legal reasons. You can
learn more about what you can do if your account has been disabled and how to
contact us if you think we have disabled your account by mistake.

If you delete or we disable or delete your account, and you stop accessing, using, or
visiting Facebook and the other Meta Products, or if this contract is otherwise termi-
nated, then these Terms shall terminate as an agreement between you and us, ex-
cept for the following provisions, which will remain in place: (3, 4.2-4.5).

## 4.3 Limits on liability

We work hard to provide the best Products we can and to specify clear guidelines
for everyone who uses them. Our Products, however, are provided "as is," and we
make no guarantees that they always will be safe, secure, or error-free, or that they
will function without disruptions, delays, or imperfections. To the extent permitted by
law, we also DISCLAIM ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED,
INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR
A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT. We do not control
or direct what people and others do or say, and we are not responsible for their ac-

*EXHIBIT - 20 (11 of 13)*

tions or conduct (whether online or offline) or any content they share (including offensive, inappropriate, obscene, unlawful, and other objectionable content).

We cannot predict when issues might arise with our Products. Accordingly, our liability shall be limited to the fullest extent permitted by applicable law, and under no circumstance will we be liable to you for any lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to these Terms or the Meta Products (however caused and on any theory of liability, including negligence), even if we have been advised of the possibility of such damages. Our aggregate liability arising out of or relating to these Terms or the Meta Products will not exceed the greater of $100 or the amount you have paid us in the past twelve months.

## 4.4 Disputes

We try to provide clear rules so that we can limit or hopefully avoid disputes between you and us. If a dispute does arise, however, it's useful to know up front where it can be resolved and what laws will apply.

You and Meta each agree that any claim, cause of action, or dispute between us that arises out of or relates to these Terms or your access or use of the Meta Products shall be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, cause of action, or dispute without regard to conflict of law provisions. Without prejudice to the foregoing, you agree that, in its sole discretion, Meta may bring any claim, cause of action, or dispute we have against you in any competent court in the country in which you reside that has jurisdiction over the claim.

## 4.5 Miscellaneous

1. **Supplemental Terms:** Some of the Products we offer are also governed by supplemental terms. If you use any of those Products, supplemental terms will be made available and will become part of our agreement with you. For instance, if you access or use our Products for commercial or business purposes, such as buying ads, selling products, developing apps, managing a group or Page for your business, or using our measurement services, you must agree to our Commercial Terms. If you post or share content containing music, you must comply with our Music Guidelines. If you use Avatars, then the Avatar Terms also apply. If you use our AI products and features, the Meta AI Terms also apply. To the extent any supplemental terms conflict with these Terms, the supplemental terms shall govern to the extent of the conflict.

2. **Severability:** If any portion of these Terms is found to be unenforceable, the unenforceable portion will be deemed amended to the minimum extent necessary to make it enforceable, and if it can't be made enforceable, then it will be severed



and the remaining portion will remain in full force and effect. If we fail to enforce any of these Terms, it will not be considered a waiver. Any amendment to or waiver of these Terms must be made in writing and signed by us.

3. **No Transfer:** You will not transfer any of your rights or obligations under these Terms to anyone else without our consent.

4. **Legacy Contact:** You may designate a person (called a legacy contact) to manage your account if it is memorialized. If you enable it in your settings, only your legacy contact or a person who you have identified in a valid will or similar legal document expressing clear consent to disclose your content to that person upon death or incapacity will be able to seek limited disclosure of information from your account after it is memorialized.

5. **No Third-party Beneficiaries:** These Terms do not confer any third-party beneficiary rights. All of our rights and obligations under these Terms are freely assignable by us in connection with a merger, acquisition, or sale of assets, or by operation of law or otherwise.

6. **User Name Change:** We may need to change the username for your account in certain circumstances (for example, if someone else claims the username and it appears unrelated to the name you use in everyday life).

7. **Feedback:** We always appreciate your feedback and other suggestions about our products and services. But we may use feedback and other suggestions without any restriction or obligation to compensate you, and we are under no obligation to keep them confidential.

## 5. Other terms and policies that may apply to you

- Community Standards: These guidelines outline our standards regarding the content you post to Facebook and your activity on Facebook and other Meta Products.

- Commercial Terms: These terms apply if you also access or use our Products for any commercial or business purpose, including advertising, operating an app on our Platform, using our measurement services, managing a group or a Page for a business, or selling goods or services.

- Community Payment Terms: These terms apply to payments made on or through Meta Products.

- Commerce Policies: These guidelines outline the policies that apply when you offer products or services for sale on Facebook, Instagram, and WhatsApp.

- Music Guidelines: These guidelines outline the policies that apply if you post or share content containing music on any Meta Products.

- Advertising Policies: These policies apply to partners who advertise across the Meta Products and specify what types of ad content are allowed by partners who

EXHIBIT — 2 D
(13 of 13)

advertise across the Meta Products.

- **Self-Serve Ad Terms:** These terms apply when you use self-serve advertising interfaces to create, submit, or deliver advertising or other commercial or sponsored activity or content.

- **Facebook Pages, Groups and Events Policy:** These guidelines apply if you create or administer a Facebook Page, group, or event, or if you use Facebook to communicate or administer a promotion.

- **Meta Platform Policy:** These terms apply to the use of the set of APIs, SDKs, tools, plugins, code, technology, content, and services that enables others to develop functionality, retrieve data from MetaProducts, or provide data to us.

- **Developer Payment Terms:** These terms apply to developers of applications that use Facebook Payments.

- **Meta Brand Resources:** These guidelines outline the policies that apply to use of Meta trademarks, logos, and screenshots.

- **Recommendations Guidelines:** The Facebook Recommendations Guidelines and Instagram Recommendations Guidelines outline our standards for recommending and not recommending content.

- **Live Policies:** These policies apply to all content broadcast to Facebook Live.

- **Avatar Terms:** These terms apply to the use of our Avatars and our Avatar features, including purchases and acquisitions of Avatar clothing in the Avatar store.

- **Meta AI Terms:** These terms govern use of our Generative AI products and features.

EXHIBIT - 2E
(1 OF 6)

# facebook

Log In

### Meta Commercial Terms ("Commercial Terms")

These Commercial Terms apply to access or use of the **Meta Products** (or "**Products**"), for a business or commercial purpose (except where we state that separate terms, and not these Commercial Terms, apply to such access or use of a Facebook Product). Business or commercial purposes include using ads, selling products, developing apps, managing a Page, managing a Group for business purposes, or using our measurement services regardless of the entity type.

You agree that you will ensure that any third party on whose behalf you access or use any Meta Product for any business or commercial purpose will abide by the applicable terms of use, including these Commercial Terms, the **Meta Terms of Service** ("**Terms**"), and any applicable supplemental terms, and you represent and warrant that you have the authority to bind that third party to such terms.

As more fully described below, if you reside in the United States or your business is located in the United States, these Commercial Terms require the resolution of most disputes between you and us by binding arbitration on an individual basis; class actions and jury trials are not permitted.

1. <u>Licenses:</u> As described in *"The permissions you give us"* section in our Terms, you grant us a license to content that is covered by intellectual property rights (like photos or videos) you share, post, or upload on or in connection with our Meta Products. For any access or use of the Meta Products, that license applies to content you or someone on your behalf (such as your agency that places an ad for you or your service provider that manages your Page content for you) makes available on or in connection with any Meta Product. You also will ensure that you own or have secured all rights necessary to grant the licenses and rights you (or someone on your behalf) grant to us under the Commercial Terms and any applicable supplemental terms, including permission to display, distribute and deliver your content within the Meta Products.

2. <u>Compliance with Law:</u> You represent and warrant that your access or use of the Meta Products for business or commercial purposes complies with all applicable laws, rules, and regulations. You further represent that you will restrict access to your content and apps in accordance with all applicable laws, rules, and regulations, including geo-filtering or age-gating access where required. In addition to and without limiting the requirements about who can use the Meta Products under our Terms, if you are located in a country that is subject to embargo under the laws of the United States (or under similar laws applicable to you) you may not engage in commercial activities on the Meta Products unless authorized by applicable laws. If you are on the U.S. Treasury Department's list of Specially Designated Nationals (or an equivalent list), you may not engage in commercial or business activities on the Meta Products (such as advertising or payments). You also may not access or use the Meta Products if you are prohibited from receiving products, services, or software under applicable law.

3. <u>Data Restrictions:</u> You may not send us information prohibited by the supplemental terms or policies. In addition, you may not send to us, or use Meta Products to collect from people, information that: (i) you know or reasonably should know is from or about children under the age of 13; or (ii) includes health, financial, biometrics, or other categories of similarly sensitive information (including any information defined as sensitive under applicable law); except in cases where (a) the terms for that Meta Product specifically allow it or (b) you are sending financial information for the express purpose of effecting a financial transaction either with us or as enabled by a Meta Product.

# facebook

parties and you release us, our directors, officers, employees, and agents from any claims and damages, known or unknown, arising out of or in any way connected with any claim you have against any such third parties.

If you are a California resident, you agree to waive California Civil Code § 1542, which says:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Our aggregate liability arising out of or relating to any access or use of the Meta Products, the Terms (for any access or use of the Meta Products for business or commercial purposes), or these Commercial Terms will not exceed the greater of one hundred dollars ($100) or the amount you have paid us in the past twelve months.

5. <u>Disputes:</u>

   a. <u>Third Party Claims:</u> If anyone brings a claim, cause of action, or dispute against us related to your services, actions, content or information on Facebook or other Meta Products or your use of any Meta Products, you agree to indemnify and hold us harmless from and against any damages, losses, and expenses of any kind (including reasonable legal fees and costs) related to any such claim, cause of action, or dispute.

   b. <u>Commercial Claims:</u> Sections 5.c and 5.d below apply to any claim, cause of action, or dispute that arises out of or relates to any access or use of the Meta Products for business or commercial purposes ("**Commercial Claim**") between you and Meta.

   c. <u>U.S. Commercial Claims:</u> If you reside in the United States or your business is located in the United States:

      i. You agree to arbitrate Commercial Claims between you and Meta Platforms, Inc. This provision does not cover any commercial claims relating to violations of your or our intellectual property rights, including, but not limited to, copyright infringement, patent infringement, trademark infringement, violations of the **Brand Usage Guidelines**, violations of your or our confidential information or trade secrets, or efforts to interfere with our Products or engage with our Products in unauthorized ways (for example, automated ways). If a Commercial Claim between you and Meta Platforms, Inc. is not subject to arbitration, you agree that the claim must be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, and that you submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim.

      ii. We and you agree that, by entering into this arbitration provision, all parties are waiving their respective rights to a trial by jury or to participate in a class or representative action. THE PARTIES AGREE THAT EACH MAY BRING COMMERCIAL CLAIMS AGAINST THE OTHER

*EXHIBIT - 2E*
*( 3 of 6 )*
*Log In*

# facebook

may bring a Commercial Claim only on your own behalf and cannot seek relief that would affect other parties. If there is a final judicial determination that any particular Commercial Claim (or a request for particular relief) cannot be arbitrated according to the limitations of this Section 5.c, then only that Commercial Claim (or only that request for relief) may be brought in court. All other Commercial Claims (or requests for relief) will remain subject to this Section 5.c. The Federal Arbitration Act governs the interpretation and enforcement of this arbitration provision. All issues are for an arbitrator to decide, except that only a court may decide issues relating to the scope or enforceability of this arbitration provision or the interpretation of the prohibition of class and representative actions. If any party intends to seek arbitration of a dispute, that party must provide the other party with notice in writing. This notice of dispute to us must be sent to the following address: Meta Platforms, Inc. 1601 Willow Rd. Menlo Park, CA 94025. The arbitration will be governed by the AAA's Commercial Arbitration Rules ("**AAA Rules**"), as modified by these Commercial Terms, and will be administered by the AAA. If the AAA is unavailable, the parties will agree to another arbitration provider or the court will appoint a substitute. The arbitrator will not be bound by rulings in other arbitrations in which you are not a party. To the fullest extent permitted by applicable law, any evidentiary submissions made in arbitration will be maintained as confidential in the absence of good cause for its disclosure. The arbitrator's award will be maintained as confidential only to the extent necessary to protect either party's trade secrets or proprietary business information or to comply with a legal requirement mandating confidentiality. Each party will be responsible for paying any AAA filing, administrative and arbitrator fees in accordance with AAA Rules, except that we will pay for your filing, administrative, and arbitrator fees if your Commercial Claim for damages does not exceed $75,000 and is non-frivolous (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)). If you do not wish to be bound by this provision (including its waiver of class and representative claims), you must notify us as set forth below within 30 days of the first acceptance date of any version of these Commercial Terms containing an arbitration provision. Your notice to us under this Section 5.c must be submitted to the address here: Meta Platforms, Inc. 1601 Willow Rd. Menlo Park, CA 94025. All Commercial Claims between us, whether subject to arbitration or not, will be governed by California law, excluding California's conflict of laws rules, except to the extent that California law is contrary to or preempted by federal law. If a Commercial Claim between you and us is not subject to arbitration, you agree that the claim must be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, and that you submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim.

d. <u>Commercial Claims outside the United States:</u> If you reside outside the United States or your business is located outside the United States, you agree that:

    i. Any Commercial Claim between you and Meta Platforms, Inc. must be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, that you submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Commercial Terms and any such claim, without regard to conflict of law provisions.

    ii. Any Commercial Claim between you and Meta Platforms Ireland Limited must be resolved

*EXHIBIT - 2E*
*( 4 of 6)*
*(Log In)*

# facebook

laws of the Republic of Ireland will govern these Commercial Terms and any such claim, without regard to conflict of law provisions.

    iii. Notwithstanding (i) and (ii) above, any Commercial Claim between you and both Meta Platforms, Inc. and Meta Platforms Ireland Limited must be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, that you submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Commercial Terms and any such claim, without regard to conflict of law provisions.

    iv. Without prejudice to the foregoing, you agree that, in our sole discretion, we may also bring any claim we have against you related to efforts to abuse, interfere, or engage with our Products in unauthorized ways in the country in which you reside that has jurisdiction over the claim.

   e. <u>European Disputes:</u> Nothing in this Section 5 shall limit or restrict any rights and remedies you have under the DMA. Without prejudice to any other rights and remedies you may have under these Commercial Terms and applicable laws, if you are a "business user" of our online social networking core platform service(s), please see the **alternative dispute settlement mechanism** ("ADSM") offered subject to Article 6(12) of the DMA. "Business user" is defined under Article 2 paragraph (21) of the Regulation (EU) 2022/1925 (the "Digital Markets Act" or "DMA").

   f. <u>Severability:</u> If any provision of this Section 5 is found unenforceable, that provision will be severed and the balance of this Section 5 will remain in full force and effect.

6. <u>**Updates:**</u> We may need to update these Commercial Terms from time to time, including to accurately reflect the access or uses of our Products for business or commercial purposes, and so we encourage you to check them regularly for any updates. By continuing any access or use of any Meta Products for business or commercial purposes after any notice of an update to these Commercial Terms, you agree to be bound by them. Any updates to Section 5 of these Commercial Terms will apply only to disputes that arise after notice of the update takes place. If you do not agree to the updated terms, please stop all access or use of our Products for business or commercial purposes.

7. <u>**Conflicts and Supplemental Terms:**</u> If there is a conflict between these Commercial Terms and the Terms, these Commercial Terms will govern with respect to your access and use of the Meta Products for business or commercial purposes to the extent of the conflict. Supplemental terms and policies may also apply to your use of certain Meta Products. To the extent those supplemental terms conflict with the Commercial Terms, the supplemental terms will govern with respect to your use of those Meta Products to the extent of the conflict.

   a. If any portion of these Commercial Terms are found to be unenforceable, then (except as otherwise provided) that portion will be severed and the remaining portion will remain in full force and effect.

   b. If we fail to enforce any of these Commercial Terms, it will not be considered a waiver.

# facebook

c. Except as permitted in Section 6, any amendment to or waiver of these Commercial Terms must be made in writing and signed by us.

d. You will not transfer any of your rights or obligations under these Commercial Terms to anyone else without our consent.

e. These Commercial Terms do not confer any third party beneficiary rights.

f. We offer tools to provide transparency and controls to our users about the Facebook experience, including information to show them why they are being shown specific content or provide feedback about content, and controls to block content or stop seeing certain types of content (such as by removing themselves from interests used for advertising). You agree that information about you and your use of Meta Products for commercial or business purposes may be included in these tools. For clarity, our license to content extends to the display of content in conjunction with providing these tools.

g. You consent that we may disclose your advertising content and Facebook Page posts ("**Commercial Content**"), and all information associated with such Commercial Content, including information associated with the delivery of that Commercial Content, in response to valid legal process related to an electoral matter or to a governmental entity or body if Meta believes that disclosure would assist in a lawful investigation.

h. Please note that our retention policies for Commercial Content may differ from those set forth in the Terms. We retain Commercial Content as necessary to provide our services to users, for internal record keeping, and for product improvement and safety purposes.

i. All of our rights and obligations under these Commercial Terms are freely assignable by us in connection with a merger, acquisition, or sale of assets, or by operation of law or otherwise.

j. Nothing in these Commercial Terms or any applicable supplemental terms will prevent us from complying with the law.

k. We reserve all rights not expressly granted to you.

Note: For purposes of these Commercial Terms, references in existing terms or agreements to (i) "the Statement of Rights and Responsibilities," "Statement," or "SRR," will now mean the Meta Terms or Terms and (ii) "Facebook" (when used to refer to our products and services) or "Facebook Services" or "Services" will now mean Meta Products.

Effective Date: March 6, 2024

English (US)   Español   Français (France)   中文(简体)   العربية   Português (Brasil)   Italiano   한국어   Deutsch   हिन्दी   日本語

EXHIBIT – 2E
(6 of 6)
Log In

# facebook

Sign Up  Log In  Messenger  Facebook Lite  Video  Meta Pay  Meta Store  Meta Quest  Ray-Ban Meta  Meta AI
Meta AI more content  Instagram  Threads  Voting Information Center  Privacy Policy  Consumer Health Privacy
Privacy Center

Privacy · Consumer Health Privacy · Terms · Advertising · Ad Choices ▦ · Cookies · More